[Civ. No. 21068. Fourth Dist., Div. Two. Sept. 19, 1980.]

ROSS SCIARROTTA et al., Plaintiffs and Appellants, v.
TEAFORD CUSTOM REMODELING, INC., et al., Defendants,
Cross-complainants and Respondents;
DEAN ROOFING COMPANY, INC., et al., Cross-defendants and
Respondents.

COUNSEL

Jacoby & Meyers, David R. Cadwell and Susan Marlow for Plaintiffs and Appellants.

Bruggeman & Smith and Cyrus J. Lemmon for Defendants, Cross-complainants and Respondents.

No appearance for Cross-defendants and Respondents.

OPINION

McDANIEL, J.—In this case we are called upon to decide whether to apply section 1717 of the Civil Code in *favor* of a promisor who sued successfully to enforce a right under the contract not related to the provision providing for fees in favor of the promisee. Here a standard

printed form used by the parties as a memorial of their building contract provided for such fees to be awarded to the defendant building contractor should it be forced to sue to recover "the contract price" due under the contract. The action in the trial court, however, was brought by the owner plaintiffs for an alleged breach of defendant's agreement to construct for plaintiffs a house "in a substantial and workmanlike manner." The plaintiffs prevailed, and sought to recover their attorney's fees. ■ The trial court ruled against the plaintiffs, and on plaintiffs' appeal[1] we hold that section 1717 limits reciprocity to those specific provisions of the contract in which attorney's fees are provided. Consequently, we affirm the judgment.

## FACTS

In 1973, the plaintiffs entered into a written contract with defendant whereby the defendant agreed to construct a house on plaintiffs' property in Hemet according to plans which the plaintiffs provided. Plaintiffs were to pay $46,400 to defendant when the house was built. Among the printed terms contained in the form contract was the following: "In the event that default should occur in the payment of the Contract price or of any part thereof, Owner agrees to pay Contractor's reasonable attorney's fees and court costs incurred by Contractor to enforce payment herein."

The house was completed, and we can infer from the record that the purchase price was paid and the plaintiffs moved in. However, the plaintiffs soon noticed defects in the house. The roof had what they described as an unsightly hump in it. It also leaked. A kitchen shelf was not constructed as specified by plaintiffs, and the air conditioning-heating unit, manufactured by cross-defendant Carrier, was allegedly defective, with the result that plaintiffs incurred extraordinarily high power bills.[2]

The plaintiffs filed suit for breach of defendant's contractual agreement to construct a house in a "good and workmanlike manner."

---

[1] A judgment of the trial court denying attorney's fees is appealable. (*Commercial & Farmers Nat. Bank* v. *Edwards* (1979) 91 Cal.App.3d 699, 702 [154 Cal.Rptr. 345].)

[2] Information adduced through discovery procedures indicated that the air conditioning problems were not a result of Carrier's product, but because the circuit breaker which had been installed in the house was poorly adapted to the function it had to perform.

Defendant cross-complained against Dean Roofing Company, Carrier, and Ed Gibbons Electrical. The parties engaged in extensive pretrial discovery and, at trial, stipulated that the defendant and cross-defendants pay plaintiffs an aggregate of $7,500. The trial court reserved the issue of whether plaintiffs were entitled to attorney's fees. A hearing was held, after which the trial court ruled that the plaintiffs were not entitled to attorney's fees. Judgment was entered accordingly.

## ISSUES

The plaintiffs' sole issue on appeal is whether, pursuant to the provisions of Civil Code section 1717, they may recover their reasonable attorney's fees. The statute provides: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. [¶] Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void. [¶] As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."

The plaintiffs argue, because defendant is entitled to its attorney's fees in an action to collect the purchase price, that they may recover attorney's fees for their action for breach of the contractual agreement to build a good quality house.

We could find no published California case which has entertained the narrow issue of whether section 1717 applies in a case in which the contract provides for attorney's fees only in favor of one party who is sued successfully by the other to enforce a contractual right *not* the subject of the attorney fee provision in the contract. In most of the relevant published case law, the contractual attorney's fee provision has provided for unilateral attorney's fees in *any* action on the contract, or the transaction out of which the lawsuit arose has been a tort instead of a contractual issue. Nevertheless, we shall examine these cases insofar as they suggest the position which we should take.

I

Probably the best argument in favor of the plaintiffs' position is one of legislative intent, bolstered by public policy arguments. The Legislature viewed a situation in which a substantial amount of commerce was conducted through the use of adhesion contracts. It has been standard procedure for the party drafting the contract to insert a provision providing for that party's attorney's fees in the event of litigation. "Section 1717 was enacted to establish mutuality of remedy where contractual provision makes recovery of attorney's fees available for only one party [citations]. . . ." (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].)

One commentator, assuming the law to be in accord with the trial court's judgment in the case before us, suggested the following scenario: "It seems reasonable that a mass contractor who foresees that he will more often be in the position of suing the consumer than in the position of being sued by the consumer will still provide for the recovery of litigation expenses in his standard forms. A mass contractor who foresees the opposite result presumably will not. Thus, even under the California statute, the consumer is unable to recover litigation expenses in almost all the cases in which he would need such a recovery in order to make bringing a suit worthwhile, while he is still required to pay litigation expenses in almost all the cases in which the mass contractor has brought suit against him. The only result of the statute is to make mass contractors more careful about when they provide for the recovery of litigation expenses in their standard forms. Accordingly, because lenders generally sue debtors in disputes over loan agreements, one would expect to find mass lenders in California still providing for the recovery of litigation expenses in their standard forms. On the other hand, one would expect mass insurers to eliminate such provisions because they are most frequently defendants in insurance policy disputes. A spot check of lending agreements and insurance policies in use in this state bears out these expectations entirely. [Fn. omitted.]" (Slawson, *Mass Contracts: Lawful Fraud in California* (1974) 48 So.Cal.L.Rev. 1, 9.)

Perhaps in that commentator's best of all possible worlds, the law would be that urged upon us by the plaintiffs: a reciprocal right to attorney's fees for the nondrafting party in *any* suit it might bring. Such a position does have the arguable virtue of simplicity. Viewed in these terms, in order to affirm the trial court's judgment in the case before us it would be necessary to say, if defendant sues to enforce the only part

of the contract benefiting it and prevails, it is entitled to attorney's fees. However, if plaintiffs sue to enforce the only portion of the contract benefiting them, and prevail, it would be necessary to say that they may not recover attorney's fees. Thus, according to plaintiffs, the remedies available to the parties under this form contract are unequal. The plaintiffs therefore suggest that public policy demands an interpretation of section 1717 under which an attorney's fees clause should be deemed reciprocal to the point of covering any action on the contract by the promisor plaintiffs against the promisee defendant in whose favor the clause was initially inserted.

## II

The case law, however, indicates that section 1717 was never intended to have such a simplistic interpretation, but was meant to have only a selective and literal application.

In *Meininger* v. *Larwin-Northern California, Inc.* (1976) 63 Cal. App.3d 82 [135 Cal.Rptr. 1], section 1717 was held not to be applicable in a case in which the contract provided for attorney's fees in the event of tort claims by third parties. The court held that those claims would be interpreted as not being "actions on the contract" so as to require reciprocation when the parties sue on the contract. (*Id.* at p. 85.)

*McKenzie* v. *Kaiser-Aetna* (1976) 55 Cal.App.3d 84 [127 Cal.Rptr. 275], was a case in which the plaintiff's suit stated causes of action for breach of implied warranty and negligent representation, as well as for breach of contract. The jury returned a verdict in favor of plaintiff, without allocating the award between the causes of action. On appeal, the court held that attorney's fees could only be collected under section 1717 for actions on the contract. As it could not determine what proportion of the award, if any, was allocable to the contract action, no attorney's fees could be awarded. The court stated: "Had the Legislature intended to reciprocate the contractual allowance of *all* attorney's fees, it would not have limited section 1717 to apply only to provisions for attorney's fees incurred to enforce the provisions of the contract. The theory that the Legislature did intend to reciprocate the allowance of all attorney's fees, but only when there is a provision in the contract that allows such fees to one party when incurred to enforce the provisions of the contract, is implausible." (*Id.* at p. 89, italics added.) To the same effect more recently is *Stout* v. *Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637].

Finally, the case of *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556 [104 Cal.Rptr. 733], suggests that the parties can effectively limit the forms of actions to which attorney's fees are applicable, and that reciprocity would only extend to those few actions provided. In *San Luis*, the original subleasing contract contained a unilateral attorney's fee provision applicable to suits for unlawful detainer or "any other covenant herein contained." (*Id.* at p. 570.) The action in the trial court was brought to vacate an arbitration award made as provided in a modification of the original contract. The court sustained the award of attorney's fees because it observed that "[p]aragraph 22 of the sublease does not limit the right to recover attorney fees to those incurred in any particular *form* of lawsuit." (*Id.* at p. 571, original italics.) We can only surmise from the foregoing that, if, for example, attorney's fees had been limited by the sublease to actions for unlawful detainer, an award of attorney's fees to either party could not have been sustained.

From these cases it must be concluded that the law in California has been to limit the scope of application of section 1717 to the provisions which the parties themselves have agreed to make it applicable. Thus, the law review commentator noted was correct in assuming that an attorney's fee provision in a form contract must be limited to the actions included in that clause.

This conclusion is confirmed by the holding in the recent Supreme Court case of *Reynolds Metals Co.* v. *Alperson, supra*, 25 Cal.3d 124. In that case the promisee of an attorney's fee clause sued and lost. The prevailing promisors were awarded all of their attorney's fees. The Supreme Court reversed for a redetermination of the fees, stating, "[b]ecause the promissory notes contained provision limiting attorney's fees to 15 percent of the amount of the notes ($60,794.12), recovery of fees under section 1717 must be similarly limited. As we have seen, the section establishes a reciprocal right to attorney's fees, and the statutory right should be no greater than the contractual right." (*Id.* at p. 130.)

Beyond the precedential analogies, the policy arguments for construing the contractual provisions for attorney's fees under specified, limited conditions to mean that plaintiffs are entitled to them under all conditions lack logical and responsible substance.

The Supreme Court has taken a more narrow view of attorney's fees clauses precisely because of the possibility that litigation might ensue for its own sake if a simplistic and inflexible construction of attorney's fees clauses is followed. (*International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 224 [145 Cal.Rptr. 691, 577 P.2d 1031].) In *International Industries*, the Supreme Court, citing *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266, 272 [81 Cal.Rptr. 849, 461 P.2d 33], said "this court rejected literal and inflexible interpretation of attorney fee clauses, pointing out that literal construction of the clause before the court would permit—contrary to sound public policy—the promisee to recover even if he was responsible for the litigation, encouraging and in fact indemnifying vexatious and frivolous litigation. Although the contract provision in that case provided for defendant's recovery of fees for any litigation, this court held that fees could be recovered only to the extent necessary to protect the defendant's rights and that where the plaintiff is partially successful, the plaintiff's liability is limited to fees for the part of the defense which was successful. Other cases have likewise recognized that the contractual provisions for attorney fees will not be inflexibly enforced and that the form of the judgment is not necessarily controlling, but must give way to equitable considerations. [Citations.]" (*Id.* at pp. 223-224.)

Actually, there is nothing inherently wrong with contractually limiting the right to recover attorney's fees to certain instances rather than providing for them under all conditions. Indeed, an equally strong policy argument can be made to support their restrictions. After all, would the *owner*, under this contract, expect to have to pay the *contractor's* attorney's fees as well as his own should the owner sue for failure to build in a workmanlike manner and lose? The language of the contract clearly appears to limit the owner's potential damages for attorney's fees only to suits over payment of the contract price. Plaintiffs could not have it both ways by claiming that under section 1717, the owner could recover his attorney's fees if successful in such a suit, because the clause must be interpreted liberally, and yet bar the contractor from recovering his attorney's fees if successful in the defense on the ground the contractual language does not extend to suits for breach of performance. Section 1717 was intended to "transform a unilateral contract right to attorney's fees 'into a reciprocal provision.....'" (*Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal. App.3d 116, 120 [108 Cal.Rptr. 782].) Such language clearly means that to be applicable, both parties would have to be entitled to recover

if successful in a particular suit arising under the attorney's fee provision.

Further, policy considerations actually militate against a broad granting of attorney's fees in all instances to avoid the encouragement of needless litigation and encourage settlement. Such a point was urged before the trial court here. It was pointed out that the complaint was filed in May of 1975 demanding a total of $67,000 special damages, $50,000 in general damages, plus attorney's fees. It was further pointed out that at the settlement conference held two years later in May of 1977, the plaintiffs' demand was for $21,685 in special damages plus $5,000 in attorney's fees, although a $5,000 settlement figure had been suggested, but rejected. It was further pointed out to the trial court that plaintiffs persisted in this claim by subsequently asserting through plaintiffs' counsel that the claim exceeded $20,000 in special damages. Yet on the date of trial, they accepted only $500 more than the statutory offer. Then plaintiffs filed their attorney's fee bill exceeding $5,000. It was even pointed out to the trial court that there was a discrepancy between plaintiffs and their counsel because the former had stated the attorneys were being paid $60 per hour whereas the attorney's bill submitted to the court claimed $70 per hour.

Special damages are, or should be, reasonably certain of computation. From the beginning plaintiffs maintained they exceeded $20,000, and yet when time came to prove them, their settlement demand was drastically reduced.

In effect, plaintiffs would place the defendants in the unenviable no-win position of either submitting to an inflated, unsubstantiated demand for damages at the outset of litigation to avoid payment of future attorney's fees, or successfully reducing the demand to proper proportions by conducting a thorough defense and then having to pay an inflated attorney's fees bill occasioned by that defense.

Here, the contractual language was clear, explicit and unambiguous in limiting attorney's fees to a certain kind of action. Neither accepted rules of contract interpretation nor policy grounds dictate that section 1717 should be used as a vehicle to transform this limited right into an unbounded right that could not have been reasonably contemplated or intended by the parties at the time of contracting.

Disposition

The judgment is affirmed.

KAUFMAN, J.—I concur in the well-reasoned opinion authored by Mr. Justice McDaniel, but in view of appeal to consumerism in the result-oriented dissenting opinion, I think it appropriate to emphasize a point or two mentioned but perhaps not fully developed in the majority opinion.

In the first place, what is at stake here is the right of a party to limit the controversies in respect to which the prevailing party will be entitled to recover attorney fees. Although the dissent would answer "no," it does not cite a single authority or give any persuasive reason why the liberty of private parties to contract should be so restricted.

Secondly, everyone agrees that the purpose of Civil Code section 1717 is to transmute a unilateral provision for recovery of attorney fees into a reciprocal one. (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) So the question that has to be answered before it can legitimately be concluded that plaintiffs here are entitled to attorney fees under section 1717 is whether the defendant contractor would have been entitled to recover attorney fees under the contract had plaintiffs not prevailed.

There is an apparent tendency to consider contractors "bad" guys and consumers "good" guys, and had the contractor prevailed below and sought attorney fees from plaintiffs, I am virtually certain that the author of the dissent would have enthusiastically applauded the "restrictive interpretation" of the attorney fee provision adopted by the majority and now roundly criticized by him, for the result would have been to deny the contractor any such recovery.

The irony is that by concluding that plaintiffs here have a reciprocal right under Civil Code section 1717 to recover attorney fees, the dissent necessarily indicates that in a future case involving a like attorney fee provision, the contractor would be entitled to recover attorney fees from the "consumer" should the latter not prevail at trial. Thus, the effect of the holding proposed by the dissent would not be to help "poor" consumers, but to enlarge the liability of both parties for attorney fees beyond what they agreed to. Such was never the legislative intent.

The determination of the trial court was correct and is properly affirmed.

**TAMURA, Acting P. J.**—I respectfully dissent. The majority's restrictive construction of Civil Code section 1717 will enable the contracting party with the superior bargaining strength to thwart the salutary purposes sought to be achieved by the statute.

The fundamental rule of statutory interpretation is ascertainment of legislative intent and effectuation of the purpose of the law. (*Moyer* v. *Workers' Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal. Rptr. 144, 514 P.2d 1224]; *Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Section 1717 was intended to create a reciprocal right to attorney fees when the contract accords that right to one party (usually the one with superior bargaining power) but not to the other (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83]; *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 223 [145 Cal.Rptr. 691, 577 P.2d 1031]), and to prevent one-sided attorney fee provisions from being used as instruments of oppression to exact settlements of dubious or unmeritorious claims (*Coast Bank* v. *Holmes* (1971) 19 Cal. App.3d 581, 596-597 [97 Cal.Rptr. 30]). Reciprocity was designed to place the parties on an equal footing in the event either party finds it necessary to pursue judicial remedies in the enforcement of his or her respective contractual rights.

In the case at bench, the contract consists of defendant's one-page standard printed form in which the contractor agrees to perform the work "in a substantial and workmanlike manner" for a specified sum to be paid by the owner. The attorney fee provision of the contract reads: "In the event that default should occur in the payment of the contract price or any part thereof, Owners agree to pay Contractor's reasonable attorney's fees and court costs incurred by Contractor to enforce payment herein."

Plaintiffs sued defendant for damages for failure to perform the work in a workmanlike manner. Although plaintiffs prevailed in the action, the majority holds that they are nevertheless precluded from recovering attorney fees because the contract only provided for attorney fees incurred by the contractor to enforce payment of the contract price. This holding, if permitted to stand, will effectively destroy the reciprocity the Legislature intended to achieve by enacting section 1717.

If the contract had provided that the owners agree to pay reasonable attorney fees in the event the contractor brings an action "to enforce the provisions of the contract," there could not be the slightest doubt but that plaintiffs would have been entitled to attorney fees under section 1717. The distinction between the phrase "to enforce the provisions of this contract" and "to enforce payment herein" is purely one of semantics insofar as reciprocity under section 1717 is concerned. The promise for which the contractor agreed to perform was the owners' promise to pay; insofar as the contractor is concerned enforcement of that promise is the equivalent of the enforcement of the contract. Accordingly the reciprocity accorded by section 1717 requires payment of attorney fees in an action by the owners against the contractor to enforce the promise for which they agreed to pay—the promise to perform the work in a workmanlike manner. The reciprocity mandated by the statute is not limited to attorney fees incurred in defending an action brought by the party in whose favor the attorney fee clause is drawn. Section 1717 extends reciprocity to "any *action* on a contract" where the contract contains an attorney fee clause in favor of one of the parties. (*System Inv. Corp.* v. *Union Bank* (1971) 21 Cal.App.3d 137, 162-164 [98 Cal.Rptr. 735]; see *Barber* v. *LeRoy* (1974) 40 Cal.App.3d 336, 340 [115 Cal.Rptr. 272] [counterclaim]; *Coast Bank* v. *Holmes, supra*, 19 Cal.App.3d 581 [cross-complaint]; see also *Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75, 82 [146 Cal.Rptr. 57]; italics supplied.)

Our Supreme Court has held that section 1717 "reflects legislative intent that equitable considerations must prevail over both the *bargaining power of the parties* and the *technical rules of contractual construction.*" (*International Industries, Inc.* v. *Olen, supra*, 21 Cal.3d 218, 224.) The majority's approach that section 1717 "was meant to have only a selective and literal application" (*ante*, p. 449) is completely at odds with the above interpretative guideline prescribed by the Supreme Court and which has been consistently followed by reviewing courts in applying section 1717. For example, in one of the earliest cases arising under the section, this court applied the statute to preexisting contracts in order to effectuate the remedial purpose of the statute. (*Coast Bank* v. *Holmes, supra*, 19 Cal.App.3d 581, 597.) This court also held that a lessee was entitled to attorney fees under section 1717 even though it successfully defended an action by the lessor by proving there never was a valid or enforceable lease. (*Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 707 [126 Cal.Rptr. 761].) Similarly, in its most recent decision involving the section, the Supreme Court held that section 1717 provided a recip-

rocal remedy for a nonsignatory defendant who was sued on a contract as if he were a party to it. (*Reynolds Metals Co.* v. *Alperson, supra*, 25 Cal.3d 124, 128.)

Nor do the cases cited by the majority support its conclusion. *Stout* v. *Turney* (1978) 22 Cal.3d 718 [150 Cal.Rptr. 637, 586 P.2d 1228] and *McKenzie* v. *Kaiser-Aetna* (1976) 55 Cal.App.3d 84 [127 Cal. Rptr. 275], were tort actions and hence did not satisfy the statutory requirement of "any action on the contract." *Meininger* v. *Larwin-Northern California, Inc.* (1976) 63 Cal.App.3d 82 [135 Cal.Rptr. 1], involved an attorney fee clause which covered tort actions arising in connection with a contract, rather than a contract action.

The majority seeks to support its narrow view of section 1717 on the theory that the interpretation advocated by plaintiff would encourage frivolous and vexatious litigation. The majority's concern is groundless. Section 1717 only permits the prevailing party to recover attorney fees, prevailing party meaning the party "in whose favor final judgment is rendered." More importantly, as we noted in *Coast Bank* v. *Holmes, supra*, 19 Cal.App.3d 581, 597, at footnote 3: "Civil Code section 1717, is part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail. (See e.g., Civ. Code, § 1811.1 [Installment Sales Contracts]; Civ. Code, § 2983.4 [Conditional Sales Contracts]; Civ. Code, § 1794.1 [Sale Warranties Of Consumer Goods]; Civ. Code, § 1812.94 [Health Studio Contracts]; Civ. Code, § 1732 [Swimming Pool Construction Con-. tracts].)" The reciprocity required by section 1717 furthers the same legislative policy which led to the enactment of the consumer protection statutes noted above.

The majority asks the rhetorical question whether the owner would under the instant contract "expect to have to pay the *contractor's* attorney's fees as well as his own should the owner sue for failure to build in a workmanlike manner and lose?" (*Ante*, p. 451.) The significance of the question is not entirely apparent to me, but the answer is an obvious "Yes." Section 1717 provides that in such actions the "prevailing party" shall be entitled to recover attorney fees. In the hypothetical posed by the majority, the contractor would be the prevailing party. The same would be true if the contractor sued to enforce collection of the price. If

he lost, he would have to pay the owners' attorney fees as well as his own.

The majority misreads Professor Slawson's article (*Mass Contracts: Lawful Fraud in California* (1974) 48 So.Cal.L.Rev. 1) when it says that the author assumes the law to be in accord with the trial court's resolution of the instant question, and inferentially with the majority opinion. (*Ante,* pp. 448, 450.) I fail to find such assumption in the article. Professor Slawson simply points out that a mass contractor who anticipates that he will be more likely to be suing the consumer than be in a position of being sued by the consumer will provide for recovery of litigation expenses in his standard contract form, but if he anticipates the opposite he will not. The commentator, thus, makes the point that despite section 1717, the consumer's right to recover attorney fees will depend on whether or not the mass contractor decides to include an attorney fee clause in its standard contracts.

I respectfully conclude that the majority's construction of section 1717 to the instant case will revive the evils of the one-sided attorney fee clauses which were intended to be remedied by the statute. Purveyors of standardized contracts will be able to avoid the reciprocity requirement of section 1717 simply by providing that in the event suit is brought to enforce payment of the contract price or any part thereof, the consumer agrees to pay reasonable attorney fees.

I would reverse the judgment with directions to award plaintiffs reasonable attorney fees incurred in the prosecution of this action in the court below and on appeal.

Appellants' petition for a hearing by the Supreme Court was denied January 14, 1980. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.