[No. B170379. Second Dist., Div. Four. Apr. 5, 2005.]

SHOBHAN PAUL et al., Plaintiffs and Appellants, v.
JUERGEN ADOLF SCHOELLKOPF et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III of the Discussion.

COUNSEL

Edward J. Horowitz for Plaintiffs and Appellants.

Shoop & Leanse and Paul Shoop for Defendants and Respondents.

OPINION

**EPSTEIN, P. J.**—This case arises from a dispute between buyers and sellers of residential property. The buyers were awarded judgment, including attorney fees. In the published portion of this opinion we hold that a provision for attorney fees in escrow instructions limited to fees incurred by the escrow

company in collecting for escrow services does not apply to other disputes between the buyer and seller over their land sale contract. Because the attorney fees provision in this case is so limited, and the dispute between the parties had nothing to do with the adequacy of services performed by the escrow company or payment of its fees and expenses, we shall reverse the award of attorney fees. In unpublished portions of the opinion we reduce the amount of damages and reject arguments by the appellant concerning a setoff and the bar of the statute of limitations.

## FACTUAL AND PROCEDURAL SUMMARY

In 1988, Shobhan and Gurmit Paul sold a piece of unimproved real estate located at 31499 Pacific Coast Highway in Malibu (the Schoellkopf property) to Juergen and Monika Schoellkopf. The Pauls own an adjacent lot, located at 31505 Pacific Coast Highway, where they built a house and currently reside.

The parties signed three documents regarding the sale: the purchase agreement, the addendum, and the escrow instructions. The Schoellkopfs agreed to pay $325,000 for the lot. The Pauls agreed to build road and water connections to the lot, and the Schoellkopfs agreed to pay half the costs, up to $65,000. The Pauls also promised to install a new fire hydrant, without charge to the Schoellkopfs, or buy into an existing one and share the cost. The parties also agreed that the Pauls would have the right to approve the location and height of the Schoellkopfs' new home. The agreement of the parties was contingent upon approval by the California Costal Commission of the proposed improvements on the Schoellkopfs' property.

The Schoellkopfs hired an architect to design plans for their new home. In 1989, they showed these plans to the Pauls and then submitted them to the County of Los Angeles, which approved them. The plans were then submitted to the California Coastal Commission for review, where Mr. Paul spoke in favor of approval. The plans ultimately were approved by the Coastal Commission.

Mr. Paul subsequently informed the Schoellkopfs that he did not approve the plans due to the house's elevation. The parties attempted to negotiate a different elevation, but they could not reach an agreement. In the meantime, the Pauls completed construction of their residence by 1991.

In 1998, the Schoellkopfs hired a new architect and prepared new plans. The parties continued to disagree over elevation of the house, which was modified multiple times. The Pauls interfered with the Schoellkopfs' attempts

to obtain approval for the plans from the Coastal Commission and the City of Malibu. Ultimately, in September 2001, the Pauls notified the Schoellkopfs that they approved the plans.

Prior to that, in 2000, the Pauls filed suit against the Schoellkopfs for breach of contract and for specific performance, primarily concerning the house's height and location. The Schoellkopfs cross-complained against the Pauls, alleging breach of the purchase agreement's implied covenant of good faith and fair dealing, for declaratory relief, and for monetary damages. The Pauls filed a cross-complaint against the Schoellkopfs, and both parties subsequently amended their cross-complaints.

After a bifurcated bench trial, the court found in favor of the Schoellkopfs. The court awarded damages for breach of contract, including $75,000 for failure to install the fire hydrant and $30,499.92 for loss of use of their property. The court also awarded the Schoellkopfs $371,942 in attorney fees. The Pauls filed this timely appeal, challenging the damages award and attorney fees.

## DISCUSSION

### I

The Pauls argue the trial court improperly awarded $371,942 in attorney fees to the Schoellkopfs. The trial court found that the escrow instructions, which had an attorney fee clause, were part of the overall agreement between the parties. Reasoning that Civil Code section 1717 (section 1717) requires recovery for all parties if any one party can recover attorney fees for any aspect of a contract, the trial court granted attorney fees to the prevailing party, the Schoellkopfs. We review de novo an award of attorney fees under a contractual provision where, as here, extrinsic evidence has not been offered to interpret the contract, and the facts are not in dispute. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569].)

Except where a contract or statute provides otherwise, each party to a lawsuit must pay its own attorney fees. (Code Civ. Proc., § 1021.) Section 1717 was enacted to "avoid the perceived unfairness of one-sided attorney fee provisions . . . ." (*International Billing Services, Inc. v.*

*Emigh* (2000) 84 Cal.App.4th 1175, 1182 [101 Cal.Rptr.2d 532].) It now provides that "if a contract gives one party the right to recover attorney fees in an action arising out of the contract, the other party, [if it prevails], is [also] entitled to fees." (*Ibid.*)

The statute also provides, in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonably attorney's fees in addition to other costs. [¶] Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." (Civ. Code, § 1717, subd. (a).)

■ "One purpose of section 1717 is to *avoid* uncertainty and clarify the issue of [attorney] fees, so both sides can make rational evaluations about the case, including prospects of settlement and so forth." (*International Billing Services, Inc. v. Emigh, supra,* 84 Cal.App.4th at pp. 1186–1187.) If a clause "does not put the principals to [an agreement] on notice that it is an attorney fees clause," section 1717 does not give all parties a right to recover attorney fees. (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1337 [93 Cal.Rptr.2d 635] [refusing to award attorney fees based on an indemnification clause in escrow instructions].)

Of the three documents signed by the parties, only one, the escrow instructions, contains an attorney fees provision. It states: "In the event of failure to pay fees or expenses due you hereunder, on demand, I agree to pay a reasonable fee for any attorney's service which may be required to collect such fees or expenses." In the agreement, the term "you" refers to Townsgate Escrow, the escrow company handling the transaction. By this provision, the escrow company and the parties manifested an intent to pay attorney fees to the escrow company if its fees or expenses went unpaid and an attorney's services were required to collect them.

■ We note that section 1717 would have made this right reciprocal had the lawsuit been over the performance of the escrow. The Legislature amended section 1717 in 1983 by adding the second paragraph.[1] The express

---

[1] "Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." (Civ. Code, § 1717, subd. (a).)

purpose of this amendment was to overturn *Sciarrotta v. Teaford Custom Remodeling, Inc.* (1980) 110 Cal.App.3d 444 [167 Cal.Rptr. 889]. (*Harbor View Hills Community Assn. v. Torley* (1992) 5 Cal.App.4th 343, 349 [7 Cal.Rptr.2d 96]; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 886 (1983–1984 Reg. Sess.) as amended May 16, 1983, p. 2.) In that case, property owners sued a contractor for breach of contract to build a house in a workmanlike manner. (*Sciarrotta v. Teaford Custom Remodeling, Inc., supra,* 110 Cal.App.3d at p. 446.) After prevailing on their claims, the property owners sought attorney fees under the following provision in the written contract: " 'In the event that default should occur in the payment of the Contract price or of any part thereof, Owner agrees to pay Contractor's reasonable attorney's fees and court costs incurred by Contractor to enforce payment herein.' " (*Ibid.*) The court denied plaintiffs' request because "the contractual language was clear, explicit and unambiguous in limiting attorney's fees to a certain kind of action," and the suit was not over the failure to pay the builder's contract price. (*Id.* at p. 452.) The Legislature disagreed, and amended the law "to provide complete mutuality of remedy where a contractual provision makes recovery of attorney fees available to one party." (*Harbor View Hills Community Assn. v. Torley, supra,* 5 Cal.App.4th at p. 349.) Thus, parties may not limit recovery of attorney fees to a particular type of claim, such as failure to pay escrow costs.

This case is different. Here, the parties agreed to a limited attorney fees provision in the initial portion of the escrow instructions. As we have seen, the clause addressed the rights and obligations of the *escrow holder* as to the buyer and seller, and vice versa. There was no attorney fees clause in the remainder of the documents, which described the rights and obligations as between *buyer and seller.*

Accordingly, the parties indicated their intent to limit recovery of fees to conflicts over the execution of the escrow. There was no such conflict in this case. This intent is also demonstrated by the parties' failure to include an attorney fees clause in their subsequent addendum, which stated additional rights and duties of buyer and seller. The parties agreed that the addendum "will dominate and supersede any other agreement . . . between buyer and seller . . . ." It was not reasonable for the Pauls and Schoellkopfs to expect that section 1717 would enable them to recover attorney fees on any claim regarding the entire transaction.

This interpretation of the parties' intent mirrors the distinct relationship between the escrow agent and the buyer and seller, as opposed to the

relationship between buyer and seller. The purpose of an escrow is to "effect[] the sale [or] transfer . . . of real . . . property . . . ." (Fin. Code, § 17003.) The transaction involves one person "deliver[ing] any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by that third person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by that third person to a grantee, grantor, promisee, [or] promisor . . . ." (Fin. Code,. § 17003.) ■ An escrow agent is merely someone who "receiv[es] escrows for deposit or delivery." (Fin. Code, § 17004.) Generally, his or her limited role in the transaction is as an agent who " 'carries out the escrow instructions.' " (*Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 117 [284 Cal.Rptr. 367], quoting *Kirby v. Palos Verdes Escrow Co.* (1986) 183 Cal.App.3d 57, 64–65 [227 Cal.Rptr. 785], disapproved on other grounds in *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 714 [117 Cal.Rptr.2d 541, 41 P.3d 548].)

■ An escrow agent's role ends once he or she has successfully exchanged payments and instruments, and he or she "has no general duty to police the affairs of its depositors." (*Claussen v. First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 435 [230 Cal.Rptr. 749].) Here, the escrow was completed successfully, but the buyer and seller still had obligations to each other, including installing a fire hydrant and securing the Pauls' approval of building plans. The breach over which the Pauls and Schoellkopfs sued came long after the role of the escrow agent had ended.

■ As we have discussed, we look to the parties' reasonable expectations to determine whether section 1717 creates the right for recovery of attorney fees. (*Campbell v. Scripps Bank, supra,* 78 Cal.App.4th at p. 1337.) ■ The parties did not agree and could not reasonably have expected that there was a right to recover attorney fees in a dispute between the buyer and seller, which had nothing to do with the performance of escrow services. This conclusion is compelled by the escrow agent's limited role and the absence of an attorney fees clause in the section detailing the mutual obligations of the buyer and seller. It was improper to award attorney fees to the Schoellkopfs.

II, III[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[*]See footnote, *ante,* page 147.

## DISPOSITION

The loss of use damages calculation is ordered reduced to 10 percent per year for the applicable period, on $325,000. The order granting attorney fees is reversed. The setoff calculation is affirmed. The order awarding $75,000 damages for failure to install the fire hydrant is affirmed. The case is remanded to the superior court for entry of a new judgment consistent with this opinion. In all other respects the judgment is affirmed. The parties are to bear their own costs on appeal.

Hastings, J., and Grimes, J.,* concurred.

A petition for a rehearing was denied April 28, 2005, and respondents' petition for review by the Supreme Court was denied June 15, 2005.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.