Filed 12/30/21 Thompson v. Flynn Riley Bailey & Pasek CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAUL AND KATHLEEN THOMPSON, <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> FLYNN RILEY BAILEY & PASEK, LLP, et al., <br><br> Defendants and Respondents. | A161238 <br><br> (Marin County <br> Super. Ct. No. CIV170608) |

Paul and Kathleen Thompson (the Thompsons) brought this legal malpractice action after defendants failed to timely appeal from a judgment against the Thompsons in an action related to the foreclosure of property (the underlying case). The underlying case consisted of two consolidated lawsuits. As is relevant here, after a bench trial in the underlying case, the court found against the Thompsons on (1) their cross-complaint for breach of a deed of trust against trustee T.D. Service Company (TDS), and (2) their claim against TDS for breach of a services agreement, which they asserted as assignees of the lender, Luther Burbank Services (LBS). With the judgment wholly in favor of TDS, the trial court in the underlying case granted TDS

1

approximately $400,000 in prevailing party attorney fees under Civil Code[1] section 1717.

Defendants filed an untimely notice of appeal as to the underlying judgment against the Thompsons, but a timely notice of appeal as to the fee award, which resulted in an affirmance. The Thompsons then settled with TDS and brought a malpractice case against defendants based on defendants' failure to timely file the appeal from the underlying judgment.

The trial court in this malpractice action found that, if defendants had timely filed an appeal in the underlying case, TDS would have prevailed on the cross-complaint, but the Thompsons ultimately would have prevailed on the assigned claim for breach of the services agreement. The court issued a judgment for the Thompsons, including damages consisting of: (1) the amount they would have recovered on the breach of services agreement claim, as well as prevailing party attorney fees they would have incurred to prosecute that claim on remand; and (2) attorney fees the Thompsons paid to TDS for the untimely appeal that they would not have had to pay had the appeal been timely filed.

The sole question in this appeal is whether the trial court in the malpractice action erred in failing to award the Thompsons additional damages to compensate them for the full amount of attorney fees they paid to TDS in the underlying case. The parties agree that the answer to this question, in turn, depends

---

[1] All further references are to the Civil Code unless otherwise specified.

2

wholly on the answer to the question of whether TDS could have been awarded prevailing party attorney fees under section 1717 on the Thompsons' cross-complaint. Because the court correctly concluded that TDS could have been awarded prevailing party attorney fees on the cross-complaint under section 1717, we affirm the judgment.

## BACKGROUND

I. **The Underlying Real Estate Transaction and Proceedings**

Luther Burbank Savings (LBS) loaned 620 Third Street, LLC (the LLC) $3,945,100 to purchase real property (the property) in Sonoma County. The loan was evidenced by a promissory note dated January 3, 2007, as modified in March 2008 (collectively, the Note), and secured by a deed of trust to the property (the Deed of Trust). Paul Thompson was the manager of PK Property LLC, which was the sole member of the LLC. The Thompsons executed a repayment guarantee for the loan (the Guaranty).

A. *LBS's Complaint, the Foreclosure Proceedings, and the Thompsons' Cross-Complaint*

In early 2009, the LLC defaulted on the loan, and the Thompsons did not repay it. LBS sued the LLC and the Thompsons seeking judicial foreclosure and damages for breach of the Guaranty.

Thereafter, LBS substituted TDS as the trustee under the Deed of Trust. A services agreement governed the relationship between LBS and TDS, and TDS agreed therein to indemnify

3

LBS for attorney fees incurred by LBS "to the extent caused by [TDS's] breach of this Agreement or by the negligence or willful misconduct of [TDS]." TDS initiated nonjudicial foreclosure proceedings under the Deed of Trust, and a foreclosure sale was set for December 2009. Due to a mistake on TDS's part, TDS made an opening bid on behalf of LBS for approximately $4,476,028, which represented the total outstanding indebtedness on the Note, instead of the $1,767,000 bid that LBS had authorized. TDS prepared a trustee's deed upon sale, but it did not record the deed. LBS notified TDS of the mistaken bid amount, and TDS determined the sale was invalid. TDS rescinded the sale, and, over the Thompsons' objections, set a new foreclosure sale. At the second sale, TDS bid $1,767,000 for the property on LBS's behalf, and LBS was declared the high bidder.

LBS thereafter amended its complaint to sue the Thompsons only to recover the deficiency under the Guaranty. The LLC and the Thompsons filed a cross-complaint against TDS asserting claims for breach of the Deed of Trust and violation of nonjudicial foreclosure statutes.[2] The Thompsons' claims were premised on allegations that the first foreclosure sale could not be rescinded, and that TDS had violated its contractual and statutory duty to sell the property to the highest bidder. The Thompsons alleged that they "incurred and will continue to incur expenses in the form of attorneys' fees, court costs, and other litigation expenses to defend against the [LBS] Complaint, and

---

[2] The cross-complaint also asserted claims for bid chilling, but those claims were dismissed before trial.

4

are entitled to recover such fees (including any fees awarded against them and in favor of [LBS]) . . . from . . . [TDS]."

In August 2011, LBS and the Thompsons settled, and LBS assigned to the Thompsons its claims against TDS arising from the processing of the foreclosure.

## B. *The Thompsons' Complaint and the Consolidation*

In December 2012, as LBS's assignees, the Thompsons filed a complaint against TDS for breach of the services agreement, express contractual indemnity, and breach of the implied covenant of good faith and fair dealing.

In September 2013, the Sonoma County Superior Court consolidated the Thompsons' cross-complaint from the first suit and their complaint in the second suit. In 2014, the parties stipulated to a bifurcated trial with the first phase to proceed as a court trial of certain legal issues based on stipulated facts. In its statement of decision from this phase, the trial court found that the Thompsons and the LLC did not have standing to bring the cross-complaint against TDS. The Thompsons did not have standing to sue TDS under the Note or Deed of Trust because they were "guarantors only," not the borrowers, and the court could not identify any obligations that TDS owed them and breached. The LLC did not have standing because its corporate status was cancelled, and, even if it was a viable entity, it sustained no damages as a result of TDS's mistake because it could not be subject to a deficiency judgment. The court also found that TDS had the right to rescind the first foreclosure sale after its mistake.

5

With regard to the Thompsons' complaint, the court found that LBS did not have valid causes of action for breach of contract or negligence that could be assigned to the Thompsons because "the second sale appears on its face to have obtained for LBS all of the benefits that LBS intended to achieve by means of the foreclosure." The court also found LBS did not validly assign claims to the Thompsons because the services agreement prohibited assignments without the consent of TDS, who did not consent. The court entered judgment in favor of TDS.

TDS moved for attorney fees under section 1717 and "the terms of the applicable agreements." The court granted the motion, although it was not clear whether the court based its award on TDS prevailing on the cross-complaint, complaint, or a combination of the two. The Thompsons appealed from the judgment and the order granting attorney fees, but their appeal from the judgment was dismissed as untimely.

On appeal from the attorney fees award, the Thompsons argued that section 1717 did not apply because the cross-complaint sought fees as damages, not costs; TDS was not entitled to attorney fees incurred defending against the cross-complaint under the terms of the Deed of Trust, Note, Guaranty, or the services agreement; and the court failed to properly apportion fees and awarded duplicative fees. A panel from Division Five of this court assumed without deciding that section 1717 attorney fees were not available under the cross-complaint, but affirmed the fee award in any event. It found that, even if TDS was only entitled to prevailing party fees under the services

6

agreement, the trial court did not abuse its discretion by failing to apportion the fees. The Thompsons thereafter settled the attorney fees award with TDS for $600,000.

## II.  The Legal Malpractice Action

In the first phase of the Thompsons' malpractice action against defendants, the trial court, acting as an appellate court, determined how a timely appeal of the judgment in the underlying case would have been resolved. The court addressed stipulated issues, including whether the Thompsons lacked standing to pursue their cross-claims against TDS, and whether they obtained a valid assignment of claims from LBS. The court found that the Thompsons were not parties to the Deed of Trust or Note, nor were they third-party beneficiaries thereof, so they lacked standing to bring the cross-complaint. But contrary to the court in the underlying case, the trial court in the malpractice action determined that LBS had validly assigned its claims against TDS to the Thompsons.[3]

In the second phase of the malpractice action, the trial court tried the "remanded" breach of services agreement claim against TDS on stipulated facts. The trial court found that TDS breached the services agreement with LBS, and the Thompsons (as LBS's assignees) would have received a judgment for

_____

[3] The other stipulated issues were whether TDS had the right to rescind the first trustee sale and whether the Thompsons' statutory claim failed because the acts of TDS were privileged under section 47. The trial court found that TDS had authority to rescind the first sale, the question of immunity under section 47 was moot, and TDS had immunity under section 47 in any event.

7

$340,340.80 in damages for this breach. The parties then stipulated to the remaining issues that required resolution, including whether the Thompsons should receive interest on the breach of contract judgment and/or prevailing party attorney fees and costs, and "whether the attorney's fees and costs in favor of [TDS]" in the underlying case should be "reversed."

After briefing and a hearing, the trial court issued a post-trial order. As to the issue of "reversal" of the TDS attorney fees award, the court observed that the question was whether the Thompsons were entitled to this amount as damages from defendants' malpractice. It found the Thompsons were entitled to a portion of the $600,000 they had paid to TDS, specifically the $105,320 they had paid TDS in connection with the untimely appeal. As for the remainder, the court found that the Thompsons had not proven to a "legal certainty" that TDS would not have been entitled to recover attorney fees under section 1717 on the Thompsons' cross-complaint. First, the court observed that the fact that the cross-complaint prayed for fees as damages, not costs, was not dispositive because contractual attorney fees may be awarded regardless of whether they were pled. Next, the court found that the Thompsons relied on the Guaranty to assert their contract claims against TDS, and they challenged the foreclosure sale asserting they had standing based on the loan documents, including the Guaranty. The Guaranty contained an attorney fee provision, so "a court could conclude that [TDS] was a prevailing party on a contract entitled to fees under the

8

reciprocity of [section] 1717." The court entered judgment for the Thompsons for $673,924.42 on September 25, 2020.

The Thompsons brought a motion to vacate the judgment, arguing that the court's finding that TDS could have been awarded attorney fees on the cross-complaint under section 1717 was not supported by the facts or law. The Thompsons asked for a new judgment awarding them the entire $600,000 they had paid to TDS. The court denied the motion. It again rejected the argument that section 1717 attorney fees could not be awarded on the cross-complaint because the Thompsons did not plead entitlement to these costs. The court stated that the theory of the Thompsons' case was breach of contract, and the Thompsons "asserted that theory by using the Guaranty of the loan that was secured by the Deed of Trust, all subject to attorney's fees provisions." Had the Thompsons prevailed on their theory, the court concluded, they could have recovered attorney fees. As a result, TDS could have recovered these fees as well. The Thompsons timely appealed.

## DISCUSSION

The sole question in this appeal is whether the trial court correctly determined that TDS could have recovered prevailing party attorney fees under section 1717 on the breach of contract claim in the Thompsons' cross-complaint. Defendants contend that we should review the trial court's determination for substantial evidence, but it is well established that we review de novo the question of whether there is a legal basis for awarding

9

attorney fees. (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 821 (*Haver*).)

Section 1717 provides, in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a); see Code Civ. Proc., §§ 1032, subd. (b) [prevailing party shall recover costs], 1033.5, subds. (a)(10)(A) [attorney fees awarded under statute or contract are allowable costs].) Section 1717 makes reciprocal an otherwise unilateral attorney fee provision in an action on the contract when the contract provides the right to one party but not the other. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610–611.) It also applies when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent; in that situation, section 1717 permits that party's recovery of attorney fees whenever the opposing party would have been entitled to attorney fees under the contract had he or she prevailed. (*Id.* at p. 611.)

Generally, attorney fees are awarded only when the contract action is between signatories to the contract containing the fee provision, but, in some circumstances, section 1717's reciprocity principles apply in actions with nonsignatories. (*Reynolds Metal Co. v. Alperson* (1979) 25 Cal.3d 124, 128

10

(*Reynolds*).) Our Supreme Court first applied reciprocity principles to a nonsignatory in *Reynolds*. There, the plaintiff sued the defendants for the contractual debt of two corporations, alleging the defendants were alter egos of the corporations. (*Id.* at p. 127.) The plaintiff lost on its alter ego theory, but the trial court awarded the prevailing defendant nonsignatories attorney fees under the contracts the plaintiff had attempted to enforce. (*Ibid.*) Our Supreme Court affirmed, holding that section 1717 must be "interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Id.* at p. 128.) Section 1717 "would fall short of th[e] goal of full mutuality of remedy if its benefits were denied to parties who defeat contract claims by proving that they were not parties to the alleged contract or that it was never formed." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870.)

In assessing whether the plaintiff would have been entitled to attorney fees under section 1717 had it prevailed, the merit of the theory used to assert the nonsignatory defendant's contractual liability "is irrelevant." (*Haver*, *supra*, 219 Cal.App.4th at p. 827.) In *Haver*, the plaintiff sued a nonsignatory defendant for breach of agreements related to a line of credit, asserting successor liability against the defendant. (*Id.* at pp. 816–817.) The trial court found against the plaintiff on the breach of contract claims, but it denied the defendant prevailing party attorney fees on those claims, finding the

11

defendant would not have been liable for the plaintiff's attorney fees had the plaintiff prevailed. (*Id.* at p. 827.) The trial court's rationale was that the plaintiff's successor liability theory "clearly" lacked merit. (*Ibid.*) The appellate court reversed. "Regardless of the [plaintiff's] theory's merit, [plaintiff] sued [defendant] on that theory and forced [defendant] to incur attorney fees to defend against it through trial. '[T]he pertinent inquiry for purposes of . . . section 1717 is whether [plaintiff] would have been entitled to attorney fees in a hypothetical situation in which [it] did prevail on its claim[s].' " (*Ibid.*) There, had the plaintiff succeeded in proving the defendant was a successor, it could have recovered attorney fees. Accordingly, the defendant was entitled to its fees. (*Ibid.*; see also *Reynolds*, *supra*, 25 Cal.3d at p. 129 ["Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation [citation], defendants would have been liable on the notes"].)

We conclude that the trial court in the malpractice action correctly found that TDS was entitled to fees on the Thompsons' cross-complaint under the rule that a prevailing party is entitled to recover its attorney fees pursuant to a contract provision if the opposing party would have been entitled to attorney fees had it prevailed. In their cross-complaint, the Thompsons sued TDS for breach of contract. Their legal theory was that they had standing to sue for breach because they, along with TDS, were parties to the loan transaction documents, including the Deed of Trust and Note. More specifically, their theories were that the Deed of

12

Trust, Note, and Guaranty were one integrated contract (§ 1642), and the Deed of Trust contained and expressly incorporated the Guaranty, making the Thompsons and TDS parties thereto.[4] Alternatively, the Thompsons claimed to be third-party beneficiaries of the Note and Deed of Trust.

Under section 1642, several papers relating to the same subject matter and executed as parts of substantially one transaction are to be construed together as one contract. (*Nevin v. Salk* (1975) 45 Cal.App.3d 331, 338 ["a note, mortgage and agreement of sale constitute one contract where they are part of the same transaction"].) "When there are several contracts between the parties as a part of a single interrelated relationship or transaction, commonly referred to as an integrated agreement, and only one contract contains an attorney's fees provision, the several documents may be construed together and the attorney's fees provision applied to any litigation involving any one, or all, of the several agreements." (12 Miller & Starr, Cal. Real Estate (4th ed. 2021) § 40:70.) Further, "where there are two or more separate, independent contracts as part of the same transaction, and one agreement incorporates a second agreement by reference, the party enforcing the incorporating document may recover fees based upon the fee provision in the incorporated document."

---

[4] The incorporation theory was that the Deed of Trust contained the Guaranty and that it incorporated the Guaranty through its definition and use of the term "Loan Documents," which meant "the Note, this Deed of Trust . . . all guaranties . . . and any other documents now or in the future executed by Trustor, any guarantor or any other person in connection with the loan evidenced by the Note . . . ."

(*Ibid*.) Both the Guaranty and the Note contain attorney fee provisions.[5] The trial court rejected the Thompsons' theory of an overarching agreement, but, had the Thompsons succeeded in convincing the court that they were parties to an overarching agreement represented by the Deed of Trust and Guaranty, or the Deed of Trust, Note, and Guaranty, that agreement would be subject to an attorney fee provision.[6]

Seeking to avoid this result, the Thompsons argue they did not sue to enforce the Note or Guaranty, so the fee provisions therein are inapplicable. This argument ignores the "one contract" and incorporation theories the Thompsons used to pursue their breach of contract claim. "Where a contract provides for attorney's fees . . . that provision shall be construed as

---

[5] The Guaranty states, "The undersigned shall pay to Lender all attorneys' fees and costs incurred by Lender in seeking to enforce any of the liabilities or obligations of the undersigned under this Guaranty." The Note states, "If an action is brought for collection of this note, or if proceedings are commenced to foreclose upon the security given for this note, I promise to pay all costs and expenses incurred including reasonable attorney's fees."

[6] The question we address is not the propriety of a finding that the agreements could be read as one. Rather, because we must assume that the Thompsons would have prevailed on their claims against TDS in order to determine whether TDS was entitled to fees for defeating the cross-complaint, we focus instead on whether the Thompsons could have recovered attorney fees had they prevailed on their theories—regardless of whether those theories had any substantive merit. (*Haver, supra,* 219 Cal.App.4th at p. 827 [the merit of the theory used to assert the nonsignatory defendant's contractual liability "is irrelevant"].)

14

applying to the entire contract . . . ."[7] (§ 1717, subd. (a); *Harbor View Hills Community Assn. v. Torley* (1992) 5 Cal.App.4th 343, 348–349 [explaining this language was added to overrule *Sciarrotta v. Teaford Custom Remodeling, Inc.* (1980) 110 Cal.App.3d 444, 446, which held that parties could limit an attorney's fee clause to specific contract provisions or actions on the contract].) Thus, irrespective of the merits of the Thompsons' theories for how they were parties to an overarching contract including all the loan documents, had they prevailed with these theories in enforcing a contractual obligation against TDS, they could have recovered attorney fees under section 1717. (See *Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378–381 [invoices with provision allowing for attorney fees for manufacturer's collection efforts were read as part of dealership agreement, and limited attorney fee clause applied to entire agreement]; 12 Miller & Starr, Cal. Real Estate (4th ed. 2021) § 40:70.)[8] Accordingly, the trial court in the malpractice action did not err

_____

[7] This general rule of construction applies "unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." (§ 1717, subd. (a).) The agreements at issue do not contain language that would except them from section 1717's general rule of construction.

[8] Citing *Raffetto v. CIT Business Lending* (E.D. Cal. March 8, 2010) No. CIV S-08-392, 2010 WL 891615, *5, the Thompsons also argued they could enforce the Deed of Trust as third-party beneficiaries of the Note and Deed of Trust. Given our disposition, we need not address whether the Thompsons would have been entitled to attorney fees if they had succeeded in enforcing the Deed of Trust as third-party beneficiaries.

in holding that the Thompsons had failed to prove TDS could not have recovered attorney fees on the cross-complaint.

*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, upon which the Thompsons rely, does not convince us otherwise. *Super 7* is distinguishable because it did not involve a contract claim under section 1717. Rather, where the purchaser of real estate sued a broker for fraud, the court in *Super 7* held that section 1717 and its reciprocity principles were inapplicable to the fraud claim. (*Id.* at pp. 546–547.) The court further held that the broker could not recover fees for defense of the tort claim under the terms of the purchase agreement at issue because the broker was not a party or third-party beneficiary thereto, and, even if he were a third-party beneficiary, the fee provision did not evidence an intent to benefit third parties. (*Id.* at pp. 549–550.)

Finally, there is no merit to the Thompsons' assertion that TDS could not have recovered fees under section 1717 because they sought attorney fees in the cross-complaint only as damages, and not pursuant to that statute. Even accepting that the Thompsons alleged a right to recover from TDS the attorney fees they incurred in the litigation with LBS as an aspect of their damages, the trial court correctly observed that attorney fees as costs can now be recovered through a noticed motion under Code of Civil Procedure section 1033.5. (*Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1797–1798.)

In sum, the trial court correctly found that the Thompsons had failed to establish that TDS could not have recovered prevailing party attorney fees under section 1717 for its

16

successful defense of the contract claim in the Thompsons' cross-complaint.  The trial court therefore did not err in denying the Thompsons' request for damages in the full amount of the attorney fees they paid to TDS.[9]

## DISPOSITION

The judgment is affirmed.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
ROSS, J.[*]

*Thompson et al. v. Flynn Riley Bailey & Pasek, LLP*  (A161238)

---

[9] In the earlier appeal of the fee award, Division Five of this court assumed that the trial court in the underlying case awarded TDS approximately $400,000 in attorney fees on the breach of services agreement claim, and that fees were not recoverable under the cross-complaint.  It nonetheless held that the trial court "could reasonably find the activities TDS undertook to defend against the cross-claims were ' " ' inextricably intertwined' " ' with the activities it undertook to defend against the complaint, 'making it "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units." ' "  This ruling supports the converse conclusion that the roughly $400,000 in attorney fees awarded by the trial court in the underlying case could have been based on successful defense of the cross-complaint alone.

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.