Filed 11/29/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| R.W.L. ENTERPRISES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>OLDCASTLE, INC., et al.,<br><br>    Defendants and Respondents. | D070189<br><br><br><br>(Super. Ct. No.<br> 37-2013-00047668-CU-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Reversed and remanded with directions.

The Kiamilev Law Group, Chandra E. Kiamilev; Karcher Harmes and Kathryn E. Karcher for Plaintiff and Appellant.

Braun & Melucci and Kerri M. Melucci for Defendants and Respondents.

All Masonry & Landscape Supply (All Masonry) appeals a postjudgment order awarding attorney fees to Oldcastle, the prevailing party in a breach of contract action.[1]

---

1    All Masonry sued related corporate entities Oldcastle, Inc., Oldcastle APG West, Inc., collectively referred to in this opinion as Oldcastle.  All Masonry also sued Sierra Building VI Limited Partnership, The Bal Corporation (dba Brandel Masonry Supplies), and Jeffrey Bal, who are not parties to this appeal.

We conclude the award of attorney fees was erroneous because the contract that All Masonry sued on did not provide for the recovery of attorney fees. Although a later agreement between the parties did include an attorney fee provision, the trial court erred in construing the two instruments together pursuant to Civil Code section 1642.[2]

FACTUAL AND PROCEDURAL BACKGROUND

Oldcastle manufactures masonry and concrete products, including its Belgard-branded concrete pavers and segmented retaining walls. All Masonry distributes landscape supplies and concrete products to customers. All Masonry claimed that in 2001, it entered into an agreement with Oldcastle to be Oldcastle's exclusive dealer of Belgard products in San Diego County.

The 2001 dealer agreement was part written and part oral. The written portion consisted of a document titled "Belgard Authorized Dealer Agreement" signed by both parties. Within that document, Oldcastle offered All Masonry training and technical support, while All Masonry agreed to use Belgard as its primary supplier and market and showcase its products. All Masonry also promised to "[m]aintain account with BELGARD on a current basis." The oral portion of the 2001 dealer agreement allegedly consisted of Oldcastle's agreement to distribute Belgard products exclusively through All Masonry in San Diego County and offer All Masonry price concessions. In 2002 and

_____

[2] Civil Code section 1642 provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

2

2006, Oldcastle sent All Masonry letters offering pricing discounts that All Masonry claimed memorialized the parties' special relationship.

The relationship soured in 2009 when Oldcastle began distributing its Belgard products through other dealers in San Diego County. It further deteriorated around 2010 or 2011 when Oldcastle hired Jeffrey Bal, a competitor's son.

During this period, All Masonry changed its business name and had to update its credit information with Oldcastle. All Masonry filled out a credit application in 2010 that contained two attorney fee provisions. The 2010 credit application also contained an integration clause that stated,

> "This document constitutes the entire CONTRACT between SELLER and PURCHASER with respect to the product and it exclusively determines the rights and obligations of these parties thereunder, notwithstanding any prior course of dealings, custom or usage of trade, or course of performance."[3]

In 2013, All Masonry sued Oldcastle for breaching the 2001 dealer agreement by distributing Belgard products through other dealers in San Diego County. The operative Second Amended Complaint alleged Oldcastle was liable for breach of contract, unfair

---

[3] Although labeled a "merger clause" in the instrument, "integration clause" would be a more appropriate name. "When the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms." (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225.) The instrument itself can show the parties' intent to nullify antecedent agreements, for example, through a provision stating, " 'there are no previous understandings or agreements not contained in the writing.' " (*Id.* at pp. 225–226; see Code Civ. Proc., § 1856, subd. (a) ["Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement."].)

business practices, antitrust, unfair competition, tortious interference, fraud, negligent misrepresentation, and negligent hiring and supervision of Jeffrey Bal. Oldcastle prevailed on the breach of contract cause of action in 2015 when the court granted its motion for summary adjudication on that claim, rejecting All Masonry's contention that it had the exclusive right to sell Belgard at preferential pricing in San Diego County. The remaining claims were likewise decided in Oldcastle's favor, either through summary adjudication or at trial. The court entered judgment for Oldcastle in December 2015.

Oldcastle filed a postjudgment motion to recover attorney fees in connection with All Masonry's breach of contract claim. It contended that fees were available pursuant to the attorney fee provisions in the 2010 credit application. All Masonry opposed the motion, arguing that the 2001 dealer agreement did not provide for attorney fees and the 2010 instrument had no bearing on the matter. The trial court ruled in Oldcastle's favor, stating:

> "While there is no attorney fee clause in the Belgard Authorized Dealer Program there is an attorney fee clause in the [2010 credit application] which was also entered into by the same parties. Pursuant to [Civil Code section] 1642, 'several contracts relating to the same matters, between the same parties, and made as part of substantially one transaction are to be taken together.'

> "The court also concludes, based on the evidence presented at trial and the allegations in Plaintiffs' complaint, that the Belgard Authorized Dealer Program and the [2010 credit application] both relate to the same subject matter; were intended to govern the same transaction; and that they can therefore be construed together as one contract. (See Boyd v. Oscar Fisher Co. (1989) 210 Cal.App.3d 368.)

> "Plaintiff cites no conflicting evidence that precludes the Court from concluding as a matter of law, that the [2010 credit application] and

4

The Belgard Authorized Dealer Program were a single contract . . . . 'Where a contract provides for attorney's fees . . . that provision shall be construed as applying to the entire contract . . . .' (Civil Code[,] § 1717 [subd.] (a).) Thus, Defendants are entitled to a fee award in conjunction with their defense of Plaintiff's first cause of action for breach of the Belgard Authorized Dealer Program."

The court awarded Oldcastle $180,120 in attorney fees for defending the breach of contract cause of action through summary adjudication and for litigating the postjudgment fees motion.

## DISCUSSION

"Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) Section 1021 of the Code of Civil Procedure codifies this general rule but allows parties to contract out of it. (*Mountain Air,* at p. 751.) Parties may contractually agree that if litigation ensues, the prevailing party will be awarded attorney fees. (*Ibid.*, citing *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).)

On a postjudgment motion for attorney fees, the trial court must evaluate whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of that agreement. (*Mountain Air, supra,* 3 Cal.5th at p. 752.) The parties disagree on the appropriate standard of review applicable to that determination on appeal. All Masonry contends the de novo standard applies, whereas Oldcastle argues we should review the ruling for substantial evidence.

As the Supreme Court recently stated, we generally review an award of attorney fees for abuse of discretion. However, we independently review the *legal basis* for an

5

attorney fee award. (*Mountain Air, supra,* 3 Cal.5th at p. 751.) Under some circumstances, this may be a mixed question of law and fact warranting a deferential standard of review. (*Ibid.*) But where the material facts are not in dispute, our review is de novo. (*Ibid.*; see *Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 843 ["The interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence."]; *Paul v. Schoellkopf* (2005) 128 Cal.App.4th 147, 151 [same] (*Paul*).)

Here, there is no dispute the 2001 dealer agreement did not include an attorney fee provision. The parties agree that to the extent attorney fees are available, that right comes from the 2010 credit application. The propriety of attorney fees rises and falls on whether the 2010 credit application, which contains an attorney fee provision, is part of the same transaction as the 2001 dealer agreement on which All Masonry based its breach of contract claim. This presents a pure question of law subject to de novo review.

We apply traditional rules of contract interpretation to "give effect to the mutual intention of the parties as it existed at the time of contracting . . . ." (*Mountain Air, supra,* 3 Cal.5th at p. 752; Civ. Code, § 1636.) If possible, we ascertain such intent "from the writing alone." (Civ. Code, § 1639.) "The words of a contract are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage . . . ." (Civ. Code, § 1644.) " ' "Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." ' " (*Mountain Air,* at p. 752.)

6

The 2010 credit application contains two attorney fee provisions. The narrower provision states,

> "Should SELLER be required to initiate any legal action or proceeding to enforce payment under this CONTRACT, or to recover damages for the breach thereof, PURCHASER agrees to pay court costs and reasonable attorney's fees incurred by SELLER."

The broader provision states,

> "If suit or action by an attorney is instituted, we agree to pay reasonable attorney fees in said suit or action."

As All Masonry contends, the provisions must be construed together to avoid rendering the narrow one superfluous. (*Tanner v. Tanner* (1997) 57 Cal.App.4th 419, 424, 426 [narrowly construing clause obligating ex-husband to " 'pay all legal fees associated with this dissolution' " because a broad reading would render indemnification provisions meaningless]; see Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping interpret the other"]; *Carson v. Mercury Ins. Co.* (2012) 210 Cal.App.4th 409, 420 [" 'An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.' "].)

Although the fee provision applies explicitly only to lawsuits initiated by the "SELLER," Civil Code section 1717 extends the right to both parties irrespective of who filed suit. (*Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th

7

1254, 1270; see generally, *Santisas, supra,* 17 Cal.4th at pp. 610–611.)[4]  Civil Code

section 1717 also extends attorney fee provisions "to the entire contract."  (Civ. Code,

§ 1717, subd. (a).)  Thus, to the extent the attorney fee provision in the 2010 credit

application applies, it applies to both parties and to their entire contract.

Because the attorney fee provision lies within the 2010 credit application and not

the 2001 dealer agreement on which All Masonry sued, the key question on appeal is

whether the two instruments are properly construed together.  The trial court concluded

they were under Civil Code section 1642 and awarded Oldcastle attorney fees.  All

Masonry challenges that ruling and distinguishes the *Boyd* case on which the trial court

relied.  Oldcastle urges us to follow *Boyd* and also affirm under section 2207 of the

California Uniform Commercial Code.[5]

All Masonry has the better argument.  We conclude the trial court erred in

construing the 2001 and 2010 instruments together under Civil Code section 1642 to

award Oldcastle attorney fees.  Neither section 2207 nor All Masonry's "judicial

admissions" change our analysis.

---

4     Civil Code section 1717 states in relevant part:  "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.  [¶]  Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract."

5     Further statutory references are to the California Uniform Commercial Code unless otherwise indicated.

1.     *Civil Code section 1642*

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.) Although the statute refers expressly to several "contracts," the language has been broadened by case law to apply to instruments or writings that are not on their own contracts. (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 770, p. 826; *Harm v. Frasher* (1960) 181 Cal.App.2d 405, 413.) Civil Code section 1642 " 'is most frequently applied to writings executed contemporaneously, but it is likewise applicable to agreements executed by the parties at different times if the later document is in fact a part of the same transaction.' " (*Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 814 (*Versaci*).)

"Whether a document is incorporated into the contract depends on the parties' intent as it existed at the time of contracting." (*Versaci, supra,* 127 Cal.App.4th at p. 814.) " ' "For the terms of another document to be incorporated into the document executed by the parties *the reference must be clear and unequivocal . . . .* " ' " (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54 (*Shaw*), italics added.) "The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.' " (*Ibid.*) To be construed together, the separate instruments must be "so interrelated as to be considered one contract." (*Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1321 (*Holguin*).) This standard compels our result. As we explain, the 2001 and 2010 instruments do not show a "clear

9

and unequivocal" intention to incorporate each other, and attorney fees are not available in this case.

All Masonry executed the 2010 credit application "for the purpose of applying for credit with Oldcastle"; it had to update its information after changing its business name. The 2010 credit application contained Oldcastle's "Standard Terms and Conditions of Sales," including the attorney fee provision, which were to "apply to all sales by SELLER"—i.e., every "product offering, catalog, proposal, or quote"—unless the parties agreed otherwise in writing. In signing the application, All Masonry agreed that the attorney fee provision would "become part of the Purchase Order CONTRACT between SELLER and the PURCHASER."

The 2001 dealer agreement is not a "Purchase Order CONTRACT." As alleged and litigated, it was a part-written, part-oral contract; the oral portions allegedly made All Masonry the exclusive Belgard dealer in San Diego County with access to price concessions. The written portion of the 2001 dealer agreement lists the respective obligations of the parties under the dealer program and cannot be reasonably construed as a "product offering, catalog, proposal, or quote" to which the "Standard Terms and Conditions of Sale" would apply. Instead, it is, as All Masonry describes it, "basically a marketing program" that has nothing to do with the specific sale or purchase of Belgard products.

Oldcastle relies on language in the 2001 dealer agreement and in an Oldcastle marketing handbook requiring Belgard dealers to "maintain account with Belgard on a current basis." It claims this language demonstrates the parties' intent to incorporate their

later credit application into their contract. We disagree. A mere reference in the 2001 instrument to maintaining a current account does not clearly and unequivocally demonstrate the parties' intent to incorporate yet-to-be determined terms of a future credit arrangement into their dealer agreement.

*Versaci* is instructive. The question there was whether a college superintendent's 2002–2003 performance goals were part of his 2001 employment contract so as to be subject to a Public Records Act request. (*Versaci, supra,* 127 Cal.App.4th at pp. 810–811.) Arguing that they were, the petitioner relied on a reference in the employment contract to the superintendent's annual evaluations based on "mutually agreed upon goals and objectives established each year." (*Id.* at pp. 811, 817.) But we rejected the argument, concluding that a "mere reference" in the employment contract to the fact that goal-setting would be part of the evaluation process "does not clearly and unequivocally evidence the parties' intent to incorporate the yet to be determined goals into the contract." (*Id.* at p. 817.) As we stated in *Versaci*, the position "that essentially any topic a contract mentions is incorporated therein is unsupported by any authority and would lead to absurd results." (*Ibid.*; cf. *Holguin, supra,* 229 Cal.App.4th at pp. 1320–1321 [separate instruments properly construed together where they expressly referred to each other and were part of a single transaction to install satellite television service].)

We find further support in the wording of the attorney fee provision itself. The provision is narrow and applies only to litigation "to enforce payment under this CONTRACT or to recover damages for the breach thereof." In *Pellegrini*, attorney fee provisions in two instruments did not apply to litigation over a third, where the fee

11

provisions applied only to actions concerning "this Agreement." (*Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 534–535.) Similarly, in *Paul*, an attorney fee provision in an escrow agreement only covered litigation over the performance of the escrow, not unrelated litigation between the real estate buyer and seller. (*Paul, supra,* 128 Cal.App.4th at pp. 152–154.) As in *Pellegrini* and *Paul*, the wording and context of the provision reveals no manifest intent to extend the recovery of attorney fees to litigation over the 2001 dealer agreement.

The trial court understandably relied on *Boyd, supra,* 210 Cal.App.3d 368 to reach a different result. But although facially similar in some respects, *Boyd* is distinguishable. A printing equipment dealer sued a manufacturer for unjustifiably terminating an exclusive dealer agreement. The manufacturer prevailed and was awarded attorney fees. (*Boyd,* at pp. 372, 375–376.) Affirming that award on appeal, the court noted that although the original dealer agreement did not contain an attorney fee clause, subsequent invoices between the parties did. (*Id.* at pp. 378–379.) The court construed the invoices together with the dealer agreement under Civil Code section 1642. (*Boyd,* at pp. 378–379.)[6]

*Boyd* differs in two critical respects that compel a different result here. First, the dealer agreement in *Boyd* required the dealer to "pay invoices on terms established by [the] manufacturer." (*Boyd, supra,* 210 Cal.App.3d at p. 379.) Later invoices and their

---

6       *Boyd* also relied on section 2207 to reach its result, as we discuss *post*. (*Boyd, supra,* 210 Cal.App.3d at p. 379.)

added terms were therefore clearly and unequivocally incorporated into the parties' original agreement. Here, the 2001 dealer agreement merely requires All Masonry to maintain its account on a current basis. This language does not demonstrate the same intent to incorporate yet-to-be-determined terms of a later credit arrangement. (*Versaci, supra,* 127 Cal.App.4th at p. 817.)[7]

Moreover, the manufacturer in *Boyd* cross complained *for unpaid invoices* and *prevailed* on that claim. (*Boyd, supra,* 210 Cal.App.3d at pp. 372, 375.) The court explained that there was "no question" the attorney fee provisions would apply if each invoice were construed as a separate contract. (*Id.* at p. 379.) Here, in contrast, Oldcastle never sued for breach of the 2010 credit application, and there is no apparent connection between that instrument and All Masonry's breach of contract claim.

The California Supreme Court's recent ruling in *Mountain Air, supra,* 3 Cal.5th 744 is helpful by way of contrast.[8] Mountain Air sued Sundowner for failing to

---

[7] Although *Boyd* is distinguishable, it is not because (as All Masonry argues) the credit application came "nearly 10 years after" the 2001 dealer agreement or even that the *Boyd* dealer agreement "expressly referred to the invoices." "In determining whether a contract contains an applicable attorney fees provision, courts have 'construe[d] together several documents containing the same subject and made as part of the same transaction [citations] even though the documents were not executed contemporaneously [citation] and do not refer to each other.' " (*Mountain Air, supra,* 3 Cal.5th at p. 759, citing *Boyd, supra,* 210 Cal.App.3d at p. 378.) What is required is that the contract has a " ' "clear and unequivocal" ' " reference that " 'guide[s] the reader to the incorporated document.' " (*Shaw, supra,* 58 Cal.App.4th at p. 54; see *Versaci, supra,* 127 Cal.App.4th at pp. 814, 817.) The *Boyd* court had such evidence; we do not.

[8] The Supreme Court issued its opinion in *Mountain Air* after Oldcastle had filed its respondent's brief on appeal. Before oral argument we sent the parties a letter instructing

repurchase certain real property pursuant to the parties' agreement. Sundowner prevailed on its affirmative defenses that the repurchase agreement was illegal and that a later option contract between the parties was a novation. (*Id.* at pp. 748–749.) At issue was whether Sundowner could recover attorney fees pursuant to an attorney fee provision in the *option* contract. (*Id.* at p. 749.) The Supreme Court held it could because Mountain Air's lawsuit "necessarily implicated" the option contract, even though the complaint made no mention of it. (*Id.* at pp. 758–759.)

In this case, All Masonry claimed Oldcastle breached the 2001 dealer agreement by distributing its product through other San Diego dealers and giving them price concessions. The 2010 credit application was not necessarily implicated in the breach of contract claim. Indeed, All Masonry could have made the identical claim (and perhaps with more force) had it purchased no product at all from Oldcastle during the relevant period. Unlike *Mountain Air* and *Boyd*, which construed separate writings together to allow the recovery of attorney fees, the 2001 and 2010 instruments are not clearly and unequivocally part of the same transaction to be construed together under Civil Code section 1642. (*Versaci, supra,* 127 Cal.App.4th at p. 817.)

Although not necessary to our conclusion, we find additional support in the integration clause in the 2010 credit application, which states that the instrument "constitutes the entire CONTRACT" and "exclusively determines the rights and obligations of these parties thereunder, notwithstanding any prior course of dealings,

---

them to be prepared to discuss the case. Both sides discussed *Mountain Air* at length and had the opportunity to argue its proper scope.

14

custom or usage of trade, or course of performance."  "The purpose of an integration clause is to preclude the introduction of evidence which varies or contradicts the terms of the written instruments."  (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1609 (*Amtower*).)

The mere existence of an integration clause does not preclude us from considering whether the 2010 credit application was part of a single transaction under Civil Code section 1642.  For example, courts have construed together *contemporaneously* executed writings under Civil Code section 1642 even if one of the writings contains an integration clause.  (See *Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1826 fns. 10 & 11 [construing corporate merger agreement (containing integration clause) with employment agreement where the two were drafted contemporaneously and cross-referenced each other]; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1675–1676 [construing contemporaneously executed employment forms together despite an integration clause in the employment contract because they "were parts of substantially one transaction and should be taken as one"].)  This makes sense—jointly executed contracts may be " ' "construe[d] . . . in light of one another" under Civil Code section 1642 without being "merge[d] . . . into a single written contract." ' "  (*Mountain Air, supra,* 3 Cal.5th at p. 759.)  But here, where the two writings were executed nine years apart, we believe an integration clause in the later writing weighs heavily against a finding that the parties intended to add terms to their prior agreement.

Oldcastle does not address the merits of All Masonry's integration clause argument and argues only that it was forfeited.  All Masonry did not raise the integration clause

15

until oral argument on Oldcastle's fees motion before the trial court. It did however broadly question the relevance of the 2010 credit application to Oldcastle's fee request. Oldcastle does not dispute the existence of the integration clause, and it seeks to apply the attorney fees provision in the same instrument. As its own authority provides, we may review a new theory on appeal that presents a question of law on undisputed facts. (*Ford Motor Co. v. Hunsberger* (2008) 163 Cal.App.4th 1526, 1530; see *Palmer v. Strawback* (1993) 17 Cal.App.4th 296, 300 [no forfeiture where the right to attorney fees was a question of law and the defendant was "merely reiterating the same argument they made below, accompanied by new and different authority"].) We conclude All Masonry did not forfeit this argument.

In sum, Civil Code section 1642 does not provide a basis for recovery of attorney fees in this action. The 2010 credit application was not part of the same transaction as the 2001 dealer agreement and cannot be construed together with that agreement.[9]

2.    *California Uniform Commercial Code Section 2207*

In finding a right to attorney fees, *Boyd* relied on Civil Code section 1642 *and* the California Uniform Commercial Code (Cal. U. Com. Code, § 2101 et seq.). All Masonry and Oldcastle both agree they were "merchants" under the California Uniform Commercial Code. (*Id.*, § 2104, subd. (1).) They disagree whether section 2207 allows us to add additional terms from the 2010 credit application to the parties' original dealer

---

[9]    Given our conclusion, we do not reach All Masonry's contention that Civil Code section 1642 does not apply to contracts that are partly oral.

16

agreement. We agree with All Masonry that section 2207 has no application to this case. Even if it did, we would reach a different result than *Boyd* due to the integration clause in the 2010 credit application.

"Under traditional common law, no contract was reached if the term of the offer and the acceptance varied." (*Steiner v. Mobil Oil Corp.* (1977) 20 Cal.3d 90, 99 (*Steiner*).) An acceptance containing additional terms was viewed as "both a rejection of the offer and a counteroffer." (4 Witkin, Summary of Cal. Law (11th ed. 2017) Sales, § 38, p. 51.) The California Uniform Commercial Code rejects this mirror image rule in the commercial context, where its strict application would be "both unfair and unrealistic." (*Steiner,* at p. 99.) Section 2207 considers "whether the parties intended to complete an agreement." (*Steiner,* at pp. 99–100.) An acceptance or confirmation is valid even if it contains additional terms "unless acceptance is expressly made conditional on assent to the additional or different terms." (§ 2207, subd. (1).)

Section 2207, known as "the battle of the forms" provision, is in the California Uniform Commercial Code chapter dealing with contract *formation*. (*Id.*, §§ 2201–2210.) As the commentary explains,

> "1. This section is intended to deal with two typical situations. The one is the written confirmation, where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed. The other situation is offer and acceptance, in which a wire or letter expressed and intended as an acceptance or the closing of an agreement adds further minor suggestions or proposals such as 'ship by Tuesday,' 'rush,' 'ship draft against bill of lading inspection allowed,' or the like. A frequent example of the second situation is the exchange of printed purchase order and acceptance

17

(sometimes called 'acknowledgement' forms. Because the forms are oriented to the thinking of the respective drafting parties, the terms contained in them often do not correspond. Often the seller's form contains terms different from or additional to those set forth in the buyer's form. Nevertheless, the parties proceed with the transaction." (U. Com. Code Com. com. 1, 23A pt. 1 West's Ann. Com. Code (2002 ed.) foll. § 2207, p. 218.)

If a contract is created, a court must decide whether the additional terms are part of it. (*Steiner, supra,* 20 Cal.3d at p. 101.) In general, "additional terms are to be construed as proposals for addition to the contract." (§ 2207, subd. (2).) But "[b]etween merchants such terms become part of the contract *unless*: [¶] (a) The offer expressly limits acceptance to the terms of the offer; [¶] (b) They materially alter it; or [¶] (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received." (*Ibid.*, italics added.)

The attorney fee provision is listed among the "Standard Terms and Conditions of Sales" in the 2010 credit application. As a whole, these terms *override* section 2207 by applying to all future sales unless both parties agree otherwise in writing. It seeks to avoid the common scenario in which a buyer's printed purchase order form contains terms that do not correspond with the seller's form. (See U. Com. Code Com. com. 1, 23A pt. 1 West's Ann. Com. Code (2002 ed.) foll. § 2207, p. 218.) If, for example, All Masonry sent Oldcastle a purchase order containing additional terms, the Standard Terms and Conditions of Sales would trump the added terms in the purchase order contract. (See *Lounge-A-Round v. GCM Mills, Inc.* (1980) 109 Cal.App.3d 190, 197 [where purchase orders stated their terms could not be changed without written authorization,

18

added arbitration clause in seller's order acknowledgements did not become part of contract].)

The parties disagree whether the "Standard Terms and Conditions of Sales," including the attorney fee provision, became part of the *original* dealer agreement pursuant to section 2207. *Boyd* seems to conclude that attorney fee provisions in invoices did just that. (*Boyd, supra,* 210 Cal.App.3d at pp. 378–379.) It relied both on Civil Code section 1642 and California Uniform Commercial Code section 2207 to reach this result. (*Boyd*, at pp. 378–379.)

We question *Boyd's* reliance on section 2207 to "consider how the invoices relate to the *dealership* agreement." (*Boyd, supra,* 210 Cal.App.3d at p. 379, italics added.) Section 2207 sought to override the common law "mirror image" rule of contract formation that required identical terms in the offer and acceptance. (§ 2207, subds. (1) & (2).) "Courts have recognized that this section is inapplicable where a contract has already been formed and additional terms are contained in a subsequent communication." (*American Licorice Co. v. Total Sweeteners, Inc.* (N.D. Cal. Aug. 13, 2013 No. C-13-1929 EMC) 2013 U.S.Dist. LEXIS 114401 at *18, citing *Besicorp Group, Inc. v. Thermo Electron Corp.* (N.D.N.Y. 1997) 981 F.Supp. 86, 98 [Section 2207 "only applies to the *formation* of a contract and is irrelevant once the parties have reached an agreement"]; see 2 Lawrence's Anderson on the Uniform Commercial Code (3d. ed.) Sales, § 2-207:44 ["In order for [U. Com. Code,] § 2-207 to apply, the later writing must either purport to accept an existing offer or it must purport to confirm an existing agreement. If it does neither of these, [U. Com. Code,] § 2-207 is not applicable to the later writing."].)

19

Outside of *Boyd*, we have found no case that relies on section 2207 to add terms to an already-formed contract.[10]

We think what *Boyd* meant to say is that the added attorney fees provision in the manufacturer's invoices became part of each purchase order contract for printing equipment pursuant to section 2207. As to the manufacturer's cross claim for unpaid invoices, there was therefore "no question the attorney fee provisions apply if each invoice is viewed as a separate contract unrelated to the dealership agreement." (*Boyd, supra,* 210 Cal.App.3d at p. 379.) In addition, the invoices were properly construed together with the parties' *original* agreement under Civil Code section 1642 for reasons previously discussed. As the prevailing defendant in the breach of contract action over the original contract, and as the prevailing party on cross claims for unpaid invoices, the manufacturer was therefore entitled to attorney fees. (Civil Code, §§ 1021, 1717.)

Under this reading of *Boyd*, as All Masonry argues, section 2207 has no application to our case. The 2010 credit application was not an acceptance of an offer or a written confirmation of a previously formed oral contract. (§ 2207, subd. (1) & U.

---

10 *Boyd* cites two cases in support of its conclusion that "[p]ursuant to [Cal. U. Com. Code] section 2207, subdivision (2), the invoices thus added an attorney fee provision to the parties' original agreement." (*Boyd, supra,* 210 Cal.App.3d at p. 379.) One case, prefaced by "cf.," construes the statute in the typical manner to decide whether an acceptance that contained added terms formed a contract. (*Kawasho Internat., U.S.A. v. Lakewood Pipe Service, Inc.* (1983) 152 Cal.App.3d 785, 792.) The other, prefaced by "accord," involves a services contract, to which section 2207 does not apply. (*South Bay Transportation Co. v. Gordon Sand Co.* (1988) 206 Cal.App.3d 650, 653, 660 [signed bills of lading added terms to a carrier's contract]; see § 2102 ["this division applies to transactions in goods"].) The Supreme Court recently cited *Boyd* with approval for its analysis of Civil Code section 1642 without discussing its treatment of California Uniform Commercial Code section 2207. (*Mountain Air, supra,* 3 Cal.5th at p. 759.)

Com. Code Com. com. 1, 23A pt. 1 West's Ann. Com. Code (2002 ed.) foll. § 2207, p. 218.) And because there is no clear and unequivocal evidence that the parties intended to incorporate the terms of the 2010 credit application into their 2001 dealer agreement, Civil Code section 1642 does not allow the recovery of attorney fees in this case.

To the extent section 2207 allows courts to add additional terms to an already-formed contract, we would reach a different result than *Boyd* due to the integration clause. *Boyd* makes no mention of any clause in the invoices that precluded their construction with the parties' original agreement. The integration clause here—which characterizes the 2010 credit application as a single self-contained agreement—reflects the parties' intent *not* to add additional terms to their prior contracts.

3.    *Judicial Admissions*

Oldcastle claims All Masonry is bound by several "judicial admissions" that support the recovery of attorney fees. Specifically, it claims All Masonry admitted that: (1) contract terms were added over the years and found in multiple documents; (2) it sought attorney fees on its breach of contract claim; and (3) it had read and agreed to the terms in the 2010 credit application. All Masonry addresses each representation, explaining why they do not constitute "judicial admissions" or impact whether attorney fees are available in this case.

We need not address Oldcastle's contentions at length. Even if we assume All Masonry made the claimed "judicial admissions," we would reach the same result. An admission that the contract consists of multiple documents does not address whether it consists of the *2010 document* at issue. Likewise, admitting to reading and signing the

21

2010 document does not address the *impact* of that document on attorney fees. (*Amtower, supra,* 158 Cal.App.4th at p. 1608 ["[I]t is not simply the party's awareness of the other document that is required.  To impliedly incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that the terms of the external document are incorporated."].)

Oldcastle places great emphasis on All Masonry's claim that *it* was entitled to attorney fees during litigation.  But a party's mere assertion of the right to recover fees does not estop it from challenging a fee award or vest the other party with the right to recoup attorney fees if it prevails.  (*Eden Township Healthcare District v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 430 fn. 7 ["[T]he mere pleading of a right to fees does not create an estoppel when the pleader would not have actually been entitled to recover fees in the event it had prevailed on the merits."]; *Sessions Payroll Management, Inc. v. Noble Const. Co., Inc*. (2000) 84 Cal.App.4th 671, 681–682 ["The mere allegation in the complaint that the plaintiff is entitled to receive attorney fees does not provide a sufficient basis for awarding them to the opposing party if the plaintiff does not prevail."]; *Bear Creek Planning Comm. v. Ferwerda* (2011) 193 Cal.App.4th 1178, 1188 [prevailing party could not claim the right to attorney fees "simply because [opposing party] had asked for those fees in his complaint"]; *Blickman Turkus LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 897–899 [rejecting view that party claiming attorney fees may later be estopped from challenging an award if the other side prevails] (*Blickman*).)  *Blickman* explored in depth cases espousing the "estoppel view, or its equivalent" that "even where the contract asserted by the losing party would not have

22

allowed him fees had he prevailed, his *merely having claimed* fees will entitle his prevailing opponent to them when he loses." (*Id.* at pp. 897–898.) Noting "[t]his approach has been repeatedly criticized and rejected," *Blickman* declined to follow it. (*Id.* at pp. 897, 899.) We find *Blickman's* reasoning persuasive.

In sum, All Masonry's alleged representations during litigation do not change our result. Oldcastle is not entitled to recover attorney fees in this action.

DISPOSITION

The April 2016 order granting Oldcastle's motion for attorney fees is reversed. The matter is remanded for the court to enter a new order denying the motion. All Masonry is entitled to its costs on appeal.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

23