Filed 7/7/22  Cable v. O'Neill CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DENISE CABLE et al., | D079096 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2019-00018657-CU-BC-CTL) |
| MICHAEL THOMAS O'NEILL, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed.

Dean Gazzo Roistacher, Lee H. Roistacher, Samuel C. Gazzo and Joseph M. Radochonski for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

Denise and James Cable appeal an order denying their motion for attorney fees after the trial court entered judgment in their favor on their breach of contract claim against Michael O'Neill for failing to repay a debt

under the terms of a written agreement.[1]  The trial court concluded that the Cables's action was based on a debt extension agreement that did not contain an attorney fee provision.  The Cables contend that the court erred in declining to read the extension agreement in conjunction with the original loan agreement, which does contain an attorney fee provision.  O'Neill did not file a respondent's brief.  We agree with the Cables's contention and reverse the order denying their motion for attorney fees.  On remand, the court shall enter a new order granting the Cables attorney fees and conduct further proceedings to fix the amount of fees.

## FACTUAL AND PROCEDURAL BACKGROUND

O'Neill asked the Cables to loan him $100,000 in February 2016. O'Neill intended to loan the money, in turn, to the owner of Ocean Enterprises, a company that conducted three different types of business: a scuba gear retail store, which included service, rental, and instructional departments; military sales; and a travel division that took clients on scuba diving trips.  O'Neill was interested in purchasing the scuba gear retail portion of the business.  O'Neill assured the Cables that their loan was solely to him and that he would pay it back quickly with interest.  Denise wrote a check to O'Neill in the amount of $100,000 on February 16, 2016.

O'Neill drafted and executed a two-page "loan agreement" dated February 17, 2016.  The terms of the loan agreement required O'Neill to repay the $100,000 with interest at a rate of 10 percent per annum.  He agreed to repay the loan "in consecutive monthly installments of interest only . . . commencing the month following the execution of this Agreement

---

[1]     In a separate opinion issued concurrently with this opinion, we affirm the judgment in favor of the Cables.  (*Cable et al. v. O'Neill* (July 7, 2022, D078601) [nonpub. opn.].)

2

and continuing until July 1, 2016.  With the balance then owing under this Agreement being paid at that time."

The agreement contains an integration clause and states, "This Agreement may only be modified by a written instrument executed by both the Borrower and the Lender."  The agreement also contains a cost provision that states, "All costs, expenses and expenditures including, without limitation, the complete legal costs incurred by enforcing this Agreement as a result of any fault by the Borrower, will be added to the principal then outstanding and will immediately be paid to Borrower."

O'Neill deposited the check on February 17, 2016.  He made three interest-only payments between March and May 2016.  O'Neill did not repay the loan by July 1, 2016.  He resumed making interest-only payments between July 2016 and January 2018.  In February 2018, the Cables and O'Neill discussed a plan for repayment of the loan.

O'Neill prepared and executed a second written agreement on February 12, 2018, titled "Debt Repayment Extension Agreement" (extension agreement) memorializing the parties' agreement to extend the debt repayment period under additional terms.  In the extension agreement, O'Neill agreed that he owed the Cables "the sum of $100,000.00, said sum being presently due and payable."  In consideration for the Cables's "forbearance," O'Neill agreed to make monthly principal payments of $5,000 plus interest until paid in full, with a full maturity date of October 10, 2019. He further agreed that if he failed to make any payments "punctually on the agreed upon extended terms," the Cables would have "full rights to proceed for the collection of the entire balance then remaining."  O'Neill made loan payments between February and November 2018.  However, he stopped making payments after November 8, 2018.

The Cables sued O'Neill for breach of contract, alleging that he entered into a written contract in 2016 to repay the $100,000 plus interest by July 2016. When he did not repay the loan on time, they entered into a written agreement to extend the debt payments, which O'Neill breached by failing to make payments after November 8, 2018.

The Cables moved for attorney fees based on the cost provision in the 2016 agreement. O'Neill opposed the motion, contending that the Cables based their breach of contract action on the extension agreement, which does not contain an attorney fee provision. O'Neill further contended that even if the action were based on the original loan agreement, the cost provision in that agreement does not contain a valid attorney fee provision. He also challenged the amount of the fees request.

In ruling on the motion, the trial court recognized that the Cables were the prevailing parties and would be entitled to attorney fees as costs, if fees and costs are recoverable under the contracts. The court determined that the parties intended the reference to "complete legal costs" in the 2016 promissory note to include attorney fees and stated that it would have awarded $31,345.00 in attorney fees if the 2016 agreement was the basis for the Cables's breach of contract action. The court concluded, however, that the Cables based their action on the 2018 extension agreement, which does not contain an attorney fee provision and does not refer to or incorporate the terms of the 2016 agreement.

## DISCUSSION

Codifying what is commonly known as the American rule, section 1021 of the Code of Civil Procedure provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied,

of the parties." Thus, while each party to a lawsuit ordinarily pays its own attorney fees, the parties may agree to a different rule for payment of fees. "In other words, section 1021 permits parties to ' "contract out" of the American rule' by executing an agreement that allocates attorney fees. [Citations.] Thus, ' "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

Code of Civil Procedure section 1033.5, subdivision (a)(10)(A) provides that a prevailing party is entitled to recover attorney fees authorized by contract as an element of costs, which are fixed upon noticed motion. (Code Civ. Proc., § 1033.5, subd. (c)(5); see also Civ. Code, § 1717, subd. (a).)

We independently review the determination of the legal basis for awarding or denying a request for attorney fees. (*Mountain Air, supra*, 3 Cal.5th at p. 751.)

The Cables are prevailing parties in this action for breach of contract. The only issue in this appeal is whether the 2018 extension agreement should be construed together with the original 2016 agreement to trigger the attorney fee provision.

"Courts will construe together several documents concerning the same subject and made as part of the same transaction (Civ. Code, § 1642; [citation]) even though the documents were not executed contemporaneously [citation] and do not refer to each other [citation]. It is generally a factual question whether several documents were intended to govern the same transaction. [Citations.] However, '[i]nterpretation of a contract presents a question of law unless it depends on conflicting evidence, and an appellate

5

court is not bound by a trial court's interpretation which does not depend on the credibility of extrinsic evidence.' " (*Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378 (*Boyd*).)[2]

" 'Whether a document is incorporated into the contract depends on the parties' intent as it existed at the time of contracting.' [Citation.] ' " 'For the terms of another document to be incorporated into the document executed by the parties *the reference must be clear and unequivocal . . . .*' " ' ([Citation], italics added . . . ) 'The contract need not recite that it "incorporates" another document, so long as it "guide[s] the reader to the incorporated document." ' [Citation.] To be construed together, the separate instruments must be 'so interrelated as to be considered one contract.' [Citation.]" (*R.W.L. Enterprises, supra*, 17 Cal.App.5th at pp. 1027–1028.)

The original loan agreement and the extension agreement are clearly interrelated. Although the 2018 extension agreement does not expressly refer to the original 2016 agreement, it is an agreement between the same parties to "Extend Debt Payment," i.e., payment of the debt memorialized in the 2016 loan agreement. The extension agreement refers to the debt that "O'Neill presently owes the creditors the sum of $100,000.00, said sum being presently due and payable." The extension agreement also refers to the Cables's "forbearance" and agrees to additional "extended terms" to pay the existing debt in consideration for this forbearance. These references guide

---

[2] The Cables did not specifically refer to Civil Code section 1642 in their briefing before the trial court, but they argue that the 2018 loan agreement was merely a modification of the 2016 agreement and that it was entitled to the attorney fee provision in the 2016 agreement. "[W]e may review a new theory on appeal that presents a question of law on undisputed facts." (*R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1031–1032 (*R.W.L. Enterprises*).)

the reader to the 2016 loan agreement, which establishes the amount presently due and payable and the right of the Cables to enforce the original agreement.  These agreements govern the same transaction—the $100,000 loan to O'Neill—and they are inextricably intertwined.  (*Boyd, supra,* 210 Cal.App.3d at p. 378.)  The Cables's breach of contract action based on the extension agreement necessarily implicated the original loan agreement.  Therefore, the Cables are entitled to attorney fees based on the terms of the original agreement.

## DISPOSITION

The order denying the Cables's motion for attorney fees is reversed. The matter is remanded with directions to enter a new order granting attorney fees and to conduct further proceedings to fix the amount of attorney fees.  The Cables are entitled to recover costs on appeal.


AARON, J.


WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

7