Filed 3/18/25  Prestige Construction etc. v. Reliant Real Estate etc. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PRESTIGE CONSTRUCTION AND RENOVATION SERVICES, INC., <br><br>    Plaintiff and Appellant, <br><br>    v. <br><br> RELIANT REAL ESTATE MANAGEMENT, INC. et al., <br><br>    Defendants and Respondents. | D084506 <br><br><br> (Super. Ct. No. MCC1900968) |

APPEAL from an order of the Superior Court of Riverside County, O.G. Magno, Judge.  Affirmed.

Gladych Law, Ismail Amin, John A. Gladych, and Cristopher Stark for Plaintiff and Appellant.

Klein & Wilson and Gerald A. Klein for Defendants and Respondents.


Prestige Construction and Renovation Services, Inc. (Prestige) provided remediation services for apartments in the Vista Promenade complex that were damaged by water after a significant storm.  Prestige, which had done prior work at the complex, was hired by the property's owner, 29605 Solana

Way, LLC, and its property manager, Reliant Real Estate Management, Inc. (collectively, Solana). After the remediation work was complete, Prestige invoiced Solana. Solana, however, refused to pay on the grounds the prices were inflated. As a result, Prestige brought the underlying lawsuit for breach of contract. The case eventually went to trial, and a jury found Solana liable for breach of contract and awarded Prestige damages of $452,422.

Thereafter, Prestige filed a motion for an award of attorneys fees. Solana opposed the motion, arguing there was no applicable attorneys fees provision under the parties' agreement for remediation services to support an award. The trial court agreed with Solana and denied the motion. On appeal from the denial, Prestige repeats the argument it made in the trial court, asserting an earlier agreement between the parties for apartment turn services contained an attorneys fee provision that also applied to the remediation services. Prestige also argues that it is minimally entitled to some attorneys fees related to services rendered under the earlier agreement. As we shall explain, we reject Prestige's arguments and affirm the trial court's order denying its motion for attorneys fees.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2018, at the request of Solana's property manager, Sana Shahien, Prestige provided Solana with pricing for renovation work needed between tenant occupancies, which the parties call "turn services." Specifically, a Prestige employee emailed Shahien a brochure setting forth prices for painting, various types of resurfacing, and janitorial services.

Thereafter, Solana approved the proposal and Prestige began providing turn services to Solana at the prices contained in the brochure.[1]

On February 14, 2019, a severe rainstorm resulted in roof leaks in many of Solana's apartments. To respond to the extensive damage caused by the leaks, Shahien reached out to several contractors, including Prestige, to see if they had the capacity to handle the water remediation. Prestige responded that they could quickly address the damage. On February 21, 2019, one of Prestige's owners, Joe Elzein, sent an email to Shahien with pricing for blowers, dehumidifiers, and drywall removal. Solana approved the pricing proposal and Prestige began the remediation work. In addition to the remediation of water damage, Prestige also prepared the units to be re-occupied by painting and repairing other finishes damaged by the water.

In April and May 2019, Prestige issued invoices to Solana for the water damage remediation work it performed as a result of the rainstorm.[2] Solana refused to pay the invoices for the remediation work, believing Prestige had inflated the prices. In August 2019, Prestige filed its initial complaint for breach of contract, enforcement of bond for release of mechanic's lien, and promissory estoppel. In the complaint, Prestige asserted Solana owed it $688,285.66. After the lawsuit was filed, Solana paid Prestige $34,955.66,

---

[1] The brochure also contained the following language under an asterisk in small print at the bottom of the second page: "Should any action of arbitration or any law be compelled to enforce the terms of this agreement, the prevailing party shall be entitled to all costs of suit and attorney's fees incurred to enforce the award or judgment received."

[2] Each invoice, like prior invoices used by Prestige, contained the following statement on the last page: "Payment of entire invoice amount is required within 30 days from invoice date. Prestige may impose a late fee of 1.5% in addition to all attorneys' fees, collection fees or other expenses arising from efforts to collect any unpaid balances on customer's account."

reducing Prestige's claim to $653,330. In October 2021, Solana made a second payment of $200,907.99, reducing the breach of contract claim further to $452,422.01.

In April 2023, the parties went to trial on Prestige's breach of contract claim. At the conclusion of the trial, the jury found Solana liable and awarded Prestige damages of $452,422. After judgment was entered in Prestige's favor, it filed a motion for $260,215 in attorneys fees, asserting it had presented trial evidence showing the brochure submitted to Solana in February 2018 and the invoices submitted regularly thereafter contained an applicable attorneys fee provision supporting the requested award.

Solana opposed the motion, arguing the parties had not agreed to an attorneys fee provision with respect to the water remediation services at issue, and that the notation in the brochure Prestige provided Solana in February 2018 applied only to prior services rendered pursuant to the pricing terms in that brochure. Solana pointed to the operable First Amended Complaint (FAC), in which Prestige specifically alleged that in February 2019, the parties "entered into a partially oral and partially written direct contractual relationship/agreement whereby [Prestige] would furnish work, labor, materials[,] services and equipment to be used in the [Vista Promenade complex] to address water damage[s] and other areas and that [Solana] would pay [Prestige] therefore at the rates charged." Solana also asserted there was no trial testimony showing the parties agreed to an attorneys fee provision. Rather, both sides testified there had never been any discussion concerning attorneys fees.

In its reply in support of its motion, Prestige asserted the parties were operating in accordance with the attorneys fee provision in the brochure and there was no requirement of a discussion about the provision in order for it to

apply. Prestige further argued Solana had included a prayer for attorneys fees in its pleadings, showing Solana also believed there was an applicable fee provision.

After the briefing, the trial court issued a tentative order denying Prestige's motion for attorneys fees. The court found the brochure proposal provided by Prestige to Solana in February 2018, which set the prices for apartment turn services and contained attorneys fee language, did not apply to the water remediation services at issue in this litigation. Rather, the attorneys fee provision in that document, as it stated, applied only to that proposal. The court also found there was "no evidence that the parties entered into a separate written agreement for the water remediation service containing the same attorney's fee provision, or that [the earlier] proposal became a part of the water remediation agreement in February 2019."

In rejecting Prestige's assertion that the water remediation service agreement was merely a continuation of the 2018 agreement, the court pointed to the FAC's allegation that the contract at issue was "a partially oral and partially written direct contractual relationship/agreement whereby Plaintiff would furnish work, labor, materials, services and equipment to be used in [Vista Promenade] to address water damage and other areas" and noted that the FAC attached the February 21, 2019 email as the basis for that agreement. With respect to Prestige's assertion that its invoices provided a basis for attorneys fees, the court found that the after-the-fact invoices did not create an agreement for fees because the allegations in the FAC explicitly conceded the apartment turn services were separate from the agreement for "water damage restoration and repairs" that were "the subject matter of [the FAC]." The trial court also found it was undisputed that Solana paid all amounts due for turn services prior to Prestige filing the FAC,

5

and that Solana had specifically rejected all invoices for the water remediation services.

No oral argument was requested after the court issued the tentative order, and it became the final order of the court. Prestige timely appealed from that order.

DISCUSSION

I

*Legal Standards*

"Code of Civil Procedure section 1021 codifies the 'American rule' that each party to litigation ordinarily pays its own attorney fees. (*Mountain Air* [*Enterprises, LLC v. Sundowner Towers, LLC* (2017)] 3 Cal.5th [744,] 751.) But [Civil Code] section 1717[3] provides an exception where the parties enter into an enforceable agreement authorizing an award of fees. Such an agreement may authorize attorney fees to the prevailing party in any litigation between the parties, whether the litigation sounds in contract or tort." (*Westwood Homes, Inc. v. AGCPII Villa Salerno Member, LLC* (2021) 65 Cal.App.5th 922, 926–927.)

"On a postjudgment motion for attorney fees, the trial court must evaluate whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of that agreement." (*R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1025 (*R.W.L. Enterprises*).) "This determination requires us to apply traditional rules of contract interpretation." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC, supra*, 3 Cal.5th at p. 752.) We "consider the mutual intention of the parties at the time the contract providing for attorney fees was formed." (*Ibid*.)

---

3       Subsequent undesignated statutory references are to the Civil Code.

6

Under section 1642, " '[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transactions, are to be taken together.' ([ ]§ 1642.)" (*R.W.L. Enterprises, supra*, 17 Cal.App.5th at p. 1027.) " 'Whether a document is incorporated into the contract depends on the parties' intent as it existed at the time of contracting.' [Citation.] ' " 'For the terms of another document to be incorporated into the document executed by the parties *the reference must be clear and unequivocal ....' " '* [Citation.] 'The contract need not recite that it "incorporates" another document, so long as it "guide[s] the reader to the incorporated document." ' [Citation.] To be construed together, the separate instrument must be 'so interrelated as to be considered one contract.' " (*Id.* at pp. 1027–1028.)

"[W]e generally review an award of attorney fees for abuse of discretion. However, we independently review the *legal basis* for an attorney fee award. [Citation.] Under some circumstances, this may be a mixed question of law and fact warranting a deferential standard of review. [Citation.] But where the material facts are not in dispute, our review is de novo." (*R.W.L. Enterprises, supra*, 17 Cal.App.5th at p. 1025.) However, whether "section 1642 applies is a question of fact for resolution by the trial court, which we review under the substantial evidence standard." (*City of Brentwood v. Department of Finance* (2020) 54 Cal.App.5th 418, 429.)

II

*Analysis*

Prestige argues the trial court erred by concluding its prior agreement with Solana for apartment turn services and the subsequent agreement for water damage remediation services were separate. Instead, Prestige argues, the court should have construed the agreements together in accordance with

7

section 1642. We disagree. Substantial evidence supported the trial court's factual finding that the parties entered into two separate agreements, rather than an extension of the initial agreement for turn services, which contained the attorneys fee provision.

Critically, as the trial court pointed out in its order, Prestige itself alleged there were two separate agreements. The FAC asserts that Prestige was pursuing a breach of contract claim based on "a partially oral and partially written direct contractual relationship/agreement" under which Prestige would "furnish work, labor, materials[,] services and equipment … to address water damage[s] and other areas …." The FAC further incorporated the February 21, 2019 email from Elzein to Shahien with pricing for water damage remediation services, which the FAC states is "part of the direct contractual agreement's terms."

The FAC then makes clear that Prestige's breach of contract claim is based *solely* on the parties' agreement for remediation services, and not on their prior agreement. Specifically, Prestige alleges it performed "apartment turn services for [Solana] between in or about March 6, 2018 and continuing through May 29, 2019 *prior to contracting* with [Solana] to perform water damage restoration and repairs which is the subject matter of [Prestige's FAC]." (Italics added.) Further, the FAC asserts that Solana satisfied all of its payment obligations under the earlier turn services agreement, noting that of the total amount billed by Prestige for those services, all but $34,955.66 was paid initially, and that before the filing of the FAC Solana paid this final amount.

To avoid its earlier litigation position that there were two separate contracts, Prestige argues on appeal that the February 19, 2021 email "does not suggest the creation of an entirely separate agreement," and that it

8

"merely provided pricing for services not expressly listed in the 2018 Agreement," which identified "water remediation" as a service Prestige offered. However, for the water remediation services agreement to be incorporated into the parties' earlier agreement, " ' " *the reference must [have] be[en] clear and unequivocal ….' " ' " (*R.W.L. Enterprises, supra*, 17 Cal.App.5th at pp. 1027–1028.) While the contract did not need to " 'recite that it "incorporate[d]" another document,' … [t]o be construed together, the separate instruments must [have been] 'so interrelated as to be considered one contract.' " (*Id*. at p. 1028.)

Here, the trial court properly concluded that the two agreements did "not show a 'clear and unequivocal' intention to incorporate each other." (*R.W.L., supra*, 17 Cal.App.5th at p. 1028.) As Solana points out, there was no testimony by witnesses for either party suggesting they were extending their prior agreement. To the contrary, the evidence before the trial court— the allegations set forth in the FAC and the absence of testimony by any witness suggesting the second agreement incorporated the first—supported the court's determination that there was no mutual intention for the 2018 brochure's attorneys fee provision to be incorporated into the later agreement for water remediation services. In addition, as the trial court pointed out, the provision itself provides that it applies to an action only to enforce that proposal's terms. The provision states, "Should any action of arbitration or any law be compelled to enforce *the terms of this agreement*, the prevailing party" is entitled to costs and attorneys fees. (Italics added.) This fact also supported the trial court's finding that the two agreements were not part of the same contract under section 1642.

Both parties look to this court's decision in *R.W.L. Enterprises, supra*, 17 Cal.App.5th 1019, to support their position. *R.W.L. Enterprises* involved

9

claims by a window distributor that a manufacturer breached an alleged dealer agreement they entered in 2001 for exclusive distribution in San Diego County. (*Id*. at p. 1023.) The defendant manufacturer prevailed in the lawsuit. After judgment was entered in its favor, the manufacturer brought a motion for attorneys fees based on a credit application made by the distributor in 2010 when it changed its business name, which contained an attorneys fee provision. (*Id*. at p. 1024.) The trial court sided with the manufacturer, finding the 2001 distribution agreement and the 2010 credit application were part of the same agreement under section 1642, and awarded the manufacturer attorneys fees. (*Ibid*.)

On appeal, this court agreed with the distributor that the credit application was not a part of the earlier distribution agreement on which the distributor's breach of contract claims were based. (*R.W.L. Enterprises, supra*, at p. 1022.) In reaching this conclusion, the Court of Appeal noted that the 2001 dealer agreement, "[a]s alleged and litigated," was a "partly written, partly oral contract" between the parties to make the distributor the exclusive dealer for the manufacturer "in San Diego County with access to price concessions." (*Id*. at p. 1028.) The agreement was " 'basically a marketing program' that ha[d] nothing to do with the specific sale or purchase of [the manufacturer's] products." (*Ibid*.) On the other hand, the later credit application was simply for the purpose of applying for credit from the manufacturer, which contained no reference or other clear connection to the distribution agreement. (*Ibid*.) The Court of Appeal held the evidence was insufficient to "clearly and unequivocally demonstrate the parties' intent to incorporate" the attorneys fee provision into the earlier agreement. (*Ibid*.)

While the facts of *R.W.L. Enterprises* are not aligned precisely with those here, the analysis that applies is the same and leads this court to the

same result.  Here, the evidence before the trial court showed the parties entered into an agreement around February 2018 for apartment turn services at the prices set forth in the proposal that Prestige sent to Solana that month.  After the rain event in 2019, Solana solicited bids from Prestige and other contractors to provide the remediation work it needed urgently.  Then, as Prestige alleged in its complaint, the parties agreed—orally and by the February 21, 2019 email—to a separate contract for that remediation work.  As in *R.W.L. Enterprises*, no evidence showed the parties intended the later contract to be incorporated into the earlier contract, or vice versa.  Accordingly, the trial court's finding that section 1642 did not apply was appropriate and supported by the evidence.[4]

Prestige also argues that even if the attorneys fee provision in the brochure it provided to Solana in 2018 does not support a fee award, the

---

[4]  Prestige also argues *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC, supra*, 3 Cal.5th 744 supports reversal of the trial court's order.  In that case, "Mountain Air sued Sundowner for failing to repurchase certain real property pursuant to the parties' agreement.  Sundowner prevailed on its affirmative defenses that the repurchase agreement was illegal and that a later option contract between the parties was a novation.  (*Id*. at pp. 748–749.)  At issue was whether Sundowner could recover attorney fees pursuant to an attorney fee provision in the *option* contract.  (*Id*. at p. 749.)  The Supreme Court held it could because Mountain Air's lawsuit 'necessarily implicated' the option contract, even though the complaint made no mention of it.  (*Id*. at pp. 758–759.)"  (*R.W.L. Enterprises, supra*, 17 Cal.App.5th at p. 1030.)  Unlike the option contract at issue in *Mountain Air*, here, the parties' earlier agreement for turn services was separate from the water damage remediation agreement, and not necessarily implicated in the later agreement.  *Mountain Air*, therefore, does not lead us to conclude reversal is required.

11

invoices it used for the subsequent remediation work do.[5]  This argument also lacks merit.  It is undisputed that Solana *rejected* all the invoices that Prestige issued for the remediation work.  Because of this fact, the trial court properly concluded the invoices did not constitute an agreement between the parties.  (See, e.g., *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208 ["Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'  ([ ] § 1580: see also §§ 1550, 1565.)  'If there is no evidence establishing a manifestation of assent to the "same thing" by both parties, then there is no mutual consent to contract and no contract formation.' "].)  And, because no agreement was formed, the invoices cannot be the basis for an attorneys fee award.[6]

Finally, Prestige asserts that at minimum the case should be remanded for the trial court to award attorneys fees based on the $34,955.66 it collected from Solana for apartment turn services after the lawsuit was initiated.  Solana responds that it paid this amount as soon as it was invoiced by Prestige for the work and, therefore, there was no breach of contract with respect to this payment.  Solana also notes that unrebutted trial testimony

---

[5]  As noted, the invoices each contained the following statement on the last page: "Payment of entire invoice amount is required within 30 days from invoice date.  Prestige may impose a late fee of 1.5% in addition to all attorneys' fees, collection fees or other expenses arising from efforts to collect any unpaid balances on customer's account."

[6]  Perhaps recognizing the flaw in its argument that Solana agreed to the fees provision by paying prior invoices, Prestige asserts that "[w]hether [Prestige] and [Solana] ever discussed an award of attorney's fees prior to the dispute is irrelevant to the fact that the *2018 Agreement contained an attorney's fee clause*."  (Italics added.)  This may be true, but whether the 2018 agreement contained an attorneys fees provision does not control the issue of whether the parties agreed to an attorneys fee provision for purposes of the later water remediation service agreement.

12

from its chief financial officer supports this fact, and that Prestige did not raise this issue after the court issued its tentative decision.

We agree with Solana that Prestige forfeited this claim by not raising it below. Prestige did not make this argument in its briefing on its motion for attorneys fees, nor did Prestige request oral argument after the trial court issued its tentative order to raise the issue at a hearing. Accordingly, we decline to reach Prestige's request for remand on this issue. (See *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 ["It is well settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue."]; *City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 28 ["As a general rule, theories not raised in the trial court cannot be raised for the first time on appeal. This is a matter of fundamental fairness to both the trial court and opposing parties."].)

DISPOSITION

The order is affirmed. Costs of appeal are awarded to Respondents.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


RUBIN, J.

13
