Filed 2/20/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SANJUANA ANDRADE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WESTERN RIVERSIDE COUNCIL OF GOVERNMENTS,<br><br>    Defendant and Respondent. | D080978<br><br><br>(Super. Ct. No. 37-2019-00052111-CU-BT-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge. Reversed with directions.

Singleton Schreiber, Benjamin I. Siminou, Harini P. Raghupathi, Jonna D. Lothyan; Law Office of David Valdez Jr. and David Valdez Jr. for Plaintiff and Appellant.

Best Best & Krieger, Scott W. Ditfurth, Andrew George Saghian and Kara L. Coronado for Defendant and Respondent.

SanJuana Andrade appeals the trial court's order denying an award of attorney's fees pursuant to Civil Code section 1717.[1]  Andrade claims that contracts with defendant Western Riverside Council of Governments (Council) contained fee provisions that, when broadened by operation of section 1717, entitle her to recover her attorney's fees.  We agree that section 1717 renders the fee provisions applicable here and remand to the trial court to determine whether Andrade is "the party prevailing on the contract" and thus entitled to fees.

## FACTUAL AND PROCEDURAL BACKGROUND

Andrade filed this lawsuit against the Council and others, claiming that she had been fraudulently enrolled in a Property Assessed Clean Energy (PACE) program.  She alleged that contractors forged her signature on PACE loan agreements with the Council, resulting in a lien on her home and greatly increased property tax assessments she had not agreed to.  Andrade's December 2020 first amended complaint, which added the Council as a party, sought to plead 12 causes of action, including multiple theories for rescission of the Council loan agreements.  On her contractual causes of action, Andrade sought rescission of the loan agreements, restitution, "damages," and declarations that the agreements were unenforceable in whole or in part.

Following an investigation by the state Department of Financial Protection and Innovation (DFPI), which confirmed the contractors' fraud, the Council released its assessment and the lien on Andrade's property.  In June 2021, it reimbursed Andrade for property tax payments she had been made toward the increased assessment.

---

[1]     Further undesignated statutory references are to the Civil Code.

In January 2022, Andrade filed a motion for attorney's fees and costs. Among other theories, Andrade relied on section 1717, which provides:

"(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract. [¶] . . . [¶]

(b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. . . . [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section."

Andrade pointed to identical provisions in the two loan agreements that provide for attorney's fees:

"The Property Owner [Andrade] acknowledges that if any Assessment Installment is not paid when due, the Authority [Council] has the right to have such delinquent Assessment Installment and its associated penalties and interest stripped off the secured property tax roll and immediately enforced through a judicial foreclosure action that could result in a sale of the Property for the payment of the delinquent installments, associated penalties and interest, and all costs of suit, including attorneys' fees."

3

The trial court denied Andrade's motion. Although the court agreed this was an action "on a contract" for purposes of section 1717, it concluded that the contractual fee provisions were limited in scope and did not entitle Andrade to attorney's fees because they concerned fees for "a judicial foreclosure action." The court found that the Council had not pursued judicial foreclosure and that Andrade "ha[d] not set forth a clear case that [Council] even could pursue judicial foreclosure." Accordingly, the court denied the request for fees under section 1717.

With respect to costs, the court found that Andrade was the "prevailing party," and thus "entitled to her costs" because she obtained "a net monetary recovery." (See Code Civ. Proc., § 1032, subd. (a)(4).) However, the court denied Andrade's request, without prejudice, as premature, and Andrade ultimately "elected not to pursue costs." Thereafter, Andrade filed a judgment of dismissal reflecting that she had "informally resolved her claims against" the Council. The court dismissed the first amended complaint in its entirety on September 21, 2022.

## DISCUSSION

Andrade argues that the trial court erred by denying her request for attorney's fees under section 1717. " ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

4

A.    *This is an "Action on a Contract"*

As an initial matter, we agree with the trial court that this is an "action on a contract" within the meaning of the statute.  (§ 1717, subd. (a).)  It is undisputed that Andrade's claims principally concerned whether the loan agreements were valid and enforceable.  " ' "California courts 'liberally construe "on a contract" to extend to any action "[a]s long as an action 'involves' a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit." ' " ' " (*In re Tobacco Cases I*, *supra*, 193 Cal.App.4th at p. 1601.)  Under this standard, Andrade's action, which applies contractual principles as to whether a contract is valid and enforceable, is an action "on a contract."

The Council argues to the contrary, contending that Andrade sought to invalidate the contract rather than enforce it.  But it has long been "settled that a party is entitled to attorney fees under section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' " (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 (*Hsu*).)

Quoting *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338 (*Xuereb*), the Council also suggests that section 1717 "covers *only* contract actions, where the theory of the case is breach of contract." (*Xuereb,* at p. 1342; accord *Federal Deposit Insurance Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 357 (*Dintino*).)  This imprecise language that the Council relies on is dicta in *Xuereb* and *Dintino* that does not bind us.  (*Xuereb,* at p. 1342 ["[A]n interpretation of Civil Code section 1717 is not an issue in the instant case."]; *Dintino*, at p. 357 [only contract claim alleged was breach of contract].)  As an initial matter, it conflicts with the plain language of section 1717, which merely requires an "action on a contract," not an action for

5

*breach* of contract. It is also inconsistent with the weight of California authority. (See, e.g., *Yoon v. Cam IX Trust* (2021) 60 Cal.App.5th 388, 393 [fraud and negligence claims seeking to avoid obligations under note constituted action " 'on a contract' "]; *California-American Water Co. v. Marina Coast Water Dist.* (2017) 18 Cal.App.5th 571, 578 ["[A] party's entitlement to attorney fees under section 1717 turns on the fact that the litigation was about the existence and enforceability of the contract, not on the presence of particular contractual claims or a request for specific performance."]; *Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1246 ["Actions for a declaration of rights based upon an agreement are 'on the contract' within the meaning of Civil Code section 1717."].)

We also have significant difficulty reconciling *Xuereb/Dintino* dicta with *Hsu.* As *Hsu* reflects, section 1717 expresses such a strong policy of mutuality that it can create a right to recover fees based on a contract that never existed. (*Hsu, supra,* 9 Cal.4th at p. 870.) Whenever a party seeks to invalidate a supposed contract on grounds that an enforceable agreement never existed, and the party opposing such a claim implicitly contends there is a valid contract, the essential premise for section 1717 is satisfied. It would seem incongruously artificial to permit the award of attorney's fees under section 1717 in situations where a party affirmatively sought to enforce a contract, but deny them where the same party made the same argument in a defensive posture.

B.    *The Fee Provision Cannot Be Limited to Judicial Foreclosure Actions*

The trial court held that the fee provisions in the loan agreements only concern judicial forfeiture and thus do not apply here. Under section 1717, subdivision (a), however, a fee provision must "be construed as applying to the entire contract, unless each party was represented by counsel in the

6

negotiation and execution of the contract, and the fact of that representation is specified in the contract." This portion of the statute was added by the Legislature in response to a Court of Appeal decision permitting "contracting parties to limit an attorney's fee clause to specific provisions of the agreement or a certain type of action." (*Harbor View Hills Community Ass'n v. Torley* (1992) 5 Cal.App.4th 343, 346 [discussing *Sciarrotta v. Teaford Custom Remodeling, Inc.* (1980) 110 Cal.App.3d 444, 446].) The purpose of the amendment was to clarify to "either party to any contract that provided for attorney's fees" that they may not "limit the forms of action to which attorney's fees are applicable." (Sen. Com. on Judiciary, com. on Analysis of Sen. Bill No. 886 (1983–1984 Reg. Sess.) as amended May 16, 1983, § 1.) Following this amendment, "parties may not limit recovery of attorney fees to a particular type of claim" (*Paul v. Schoellkopf* (2005) 128 Cal.App.4th 147, 153) "unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract" (§ 1717, subd. (a)). (See, e.g., *Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178–79 [section 1717 applied to buyer's breach of fiduciary duty claim against escrow agent where "attorney fee clause gave the right to the escrow company to recover fees if a party failed to pay escrow costs"].) The Legislature thus expanded the statute to further its fundamental goal of ensuring a " 'mutuality of remedy.' " (See *Hsu, supra,* 9 Cal.4th at 870.)

The circumstances of this case fall squarely within the purpose of the amended statute. The loan agreements provide that the Council could recover its fees in an action to enforce its rights through a judicial foreclosure proceeding. Throughout this action, Andrade sought to contest her obligations under the alleged agreements, thereby avoiding potential default

7

and foreclosure. Limiting the fee provisions to foreclosure proceedings would be the precise kind of lopsided arrangement that section 1717 prohibits.

The Council cites *Kalai v. Gray* (2003) 109 Cal.App.4th 768 for the proposition that "[t]he language of the contract strictly governs the availability of attorney's fees, and in cases where a contract provides for fees in limited types of disputes, the court may not award fees if the dispute is not within that scope." (Boldface omitted.) But *Kalai* does not address the effect of section 1717. In that case, the court considered an attorney fee provision permitting an award of fees "only in favor of 'the prevailing party to [the a]rbitration.' " (*Kalai,* at p. 777.) Plaintiff sought to litigate rather than adhering to the binding arbitration provision. (*Id.* at p. 771.) Because the arbitration had not taken place, fees were not *yet* appropriate. (*Id.* at p. 777.) But neither party invoked section 1717, and its import was not considered by the court.

Similarly, the Council relies on language from *Travelers Indem. Co. v. Lara* (2022) 84 Cal.App.5th 1119, 1137 (*Lara*), suggesting "[i]f the action is outside the scope of the attorney fee provision, that is the end of the matter; section 1717 does not apply." As *Lara* concluded that the dispute *was* within the scope of the fee provision at issue, this statement is dicta. (*Lara,* at p. 1138.) In any event, to the extent it might be read to suggest that section 1717 cannot broaden the scope of a fee provision, the court in *Lara* relied on a general statement in *Mountain Air, supra,* 3 Cal.5th 744 regarding the sequence of the analysis. (See *Mountain Air,* at p. 752, quoting *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 990 ["Before section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of the attorney fee agreement."].) The proper application and effect of section 1717

8

was not the issue. Indeed, although it briefly notes section 1717, *Mountain Air* deals solely with the language of the contract itself, concluding that the prevailing party was entitled to fees under the agreement. (*Mountain Air*, at p. 757.)

The Council also seeks to distinguish caselaw and cabin the language of section 1717, claiming that it can only extend a fee provision to the entire contract if the action is to "enforce" the contract. As previously discussed, however, the Supreme Court has long since rejected the argument that an action to enforce the contract is different from an action to invalidate the contract under section 1717. (See *Hsu, supra*, 9 Cal.4th at p. 870 [a party may be entitled to attorney's fees under section 1717 " 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent' "].)

The Council does not dispute that the loan agreements gave it the right to recover attorney's fees from Andrade in the event of a judicial foreclosure action to enforce the contract. These provisions thus "provide[ ] that attorney's fees and costs . . . incurred to enforce th[e] contract[s][ ] shall be awarded either to one of the parties or to the prevailing party." (§ 1717, subd. (a).) The loan agreements do not specify that Andrade was represented by counsel in negotiating the contract.[2] As a result, section 1717 operates to extend the mutual right to obtain attorney's fees to the entire contract. If Andrade "is determined to be the party prevailing on the[se] contract[s] . . .

---

[2]    The Council argues that Andrade "provides no supporting authority from the record" that she was *not* represented by counsel. However, the carve-out only applies if the fact of the representation is made clear in the contract itself. (§ 1717, subd. (a).) Moreover, the Council concedes that a contractor "committed fraud by enrolling Appellant into the PACE Assessment Agreements without her consent." Clearly, she was not represented by counsel in her nonconsensual enrollment in the program.

[she] shall be entitled to reasonable attorney's fees" without regard to the purported limitation to judicial foreclosure proceedings. (*Id.,* subd. (a).)

C.    *The Trial Court Must Determine Whether Andrade is "The Party Prevailing on the Contract"*

Finally, we consider whether Andrade was "the party prevailing on the contract" for purposes of section 1717. Although both parties appear to contend the trial court found that she was, the record does not support this conclusion as a matter of law.

The court's minute order states that Andrade's motion was

"--DENIED as to attorney fees

--GRANTED as to a determination that Plaintiff is the 'prevailing party' as against defendant [Council]

--DENIED without prejudice as to costs, as Plaintiff may seek costs via a formal *Memorandum of Costs.*"

The court's reasoning makes clear that it found Andrade was a "prevailing party" for purposes of awarding costs under Code of Civil Procedure section 1032.

> "Prevailing party" is specifically defined in that statute to "include[ ] the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under [Code of Civil Procedure] Section 1034." (*Id.,* § 1032, subd. (a)(4).)

The court found that Andrade "qualifie[d] as the party with the 'net monetary recovery'."

10

The court did not, however, determine that Andrade was "the party prevailing on the contract" for purposes of section 1717, which is discussed in a different section of the court's minute order.  Section 1717 does not use the phrase "prevailing party" or incorporate the definition used in the costs statute.  Rather, "the party prevailing on the contract" for purposes of section 1717 is "the party who recovered a greater relief in the action on the contract."  (*Id.*, subd. (b)(1).)  In the event of a "simple, unqualified decision," courts may determine that a party prevailed on the contract as a matter of law.  (*Hsu, supra*, 9 Cal.4th at p. 866.)  "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)

This is not a matter in which there was a simple, unqualified decision in Andrade's favor.  Rather, after the DFPI investigation, the Council voluntarily provided, in Andrade's words, "much" of the contractual relief she was seeking.  But Andrade did not obtain *all* the relief she sought.  She sought, but did not receive, a declaration that the loan agreements were unenforceable, in whole or in part, under Civil Code section 1670.5(a). Nor did she obtain a declaration finding that the loan agreements were unenforceable, in whole or in part, under Civil Code section 1668, which prohibits "contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent."  The Council acquiesced without any admission of wrongdoing, and no judgment was entered against the Council.

11

Although it does appear that Andrade recovered the majority of what she sought from the Council, it is possible (if unlikely) that Andrade could be the prevailing party for purposes of costs under section 1032 even though she did not prevail "on the contract" for purposes of section 1717.

> It is for the trial court, in the first instance, to determine whether there is a "party prevailing on the contract" by "compar[ing] the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Hsu, supra*, 9 Cal.4th at p. 876.)

"[I]n determining litigation success," the trial court "should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' " (*Id.* at 877, italics omitted.) We remand for the trial court to conduct such an inquiry.

## DISPOSITION

The order denying attorney's fees is reversed.  We remand for the trial court to assess whether there is a "party prevailing on the contract" for purposes of section 1717 and for further proceedings as may be appropriate. Andrade is entitled to costs on appeal.

DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

13